**MARCHANT INVESTMENT
& MANAGEMENT CO.,
INC., Appellant,**

v.

**ST. ANTHONY WEST NEIGHBOR-
HOOD ORGANIZATION, INC.,
et al., Respondents.**

No. A04–900.

Court of Appeals of Minnesota.

April 5, 2005.

Matthew L. Fling, Edina, MN, for appellant.

Ansis V. Viksnins, DeAnne M. Hilgers, Lindquist & Vennum, P.L.L.P., Minneapolis, MN, for respondents.

Considered and decided by LANSING, Presiding Judge; WILLIS, Judge; and STONEBURNER, Judge.

## OPINION

LANSING, Judge.

In litigation between a real-estate developer and a neighborhood organization, the district court applied the participation-in-government immunity provided by Minn. Stat. §§ 554.01–.05 (2004) to grant judgment on the pleadings for the neighborhood organization. The developer appeals the judgment as it relates to its defamation claim and the attendant order for attorneys' fees. Because the developer's allegations do not clearly and convincingly demonstrate that the neighborhood organization's statements declare or imply a provably false assertion of defamatory fact, the district court did not err in granting the neighborhood organization participation-in-government immunity and ordering judgment on the pleadings; we therefore affirm.

## FACTS

Marchant Investment & Management Co., Inc. (Marchant) is a real-estate developer that proposed a development project, the River Run Apartment Project, in the Sheridan neighborhood of Northeast Minneapolis. St. Anthony West Neighborhood Organization, Inc. (STAWNO) is a non-profit organization that, along with other

neighborhood organizations, opposed the design of the proposed project.

While Marchant was in the process of obtaining the city's approval of the project and the necessary permits, Michael Rainville, STAWNO's president, wrote a letter to the Minneapolis Planning Department opposing Marchant's zoning application and requests for variances. Rainville sent copies of the letter to Marchant, the mayor, the city council, and another development company. The language in the letter that is relevant to this appeal states:

> We have met countless times with the developers to inform them of the vision of the Above the Falls Plan and our concerns about having that vision carried out. They have refused to listen to our concerns, especially regarding the height variance, design and the relationship the proposed project has to the Above the Falls Plan.

Marchant's president, James Bartlett, responded by letter, questioning whether Rainville was speaking for himself or for STAWNO's board and pointing out inaccuracies in Rainville's letter. Bartlett said that Marchant had never met with STAWNO and that STAWNO had not asked for a meeting. He stated that Marchant had met many times with the Sheridan Neighborhood Organization and that Rainville had personally "attended a number of those meetings." Bartlett also said that, at Rainville's suggestion, Marchant had met with MEND, an umbrella organization of neighborhood associations, and that Rainville spoke at that meeting.

Three months later Marchant sued STAWNO and its officers and directors, alleging defamation, tortious interference with a prospective business advantage, tortious interference with a contract, civil conspiracy, and civil aiding and abetting. Marchant's complaint specifically refers to Rainville's letter, the response from Bart-

lett, and a subsequent letter from Marchant to the STAWNO Board of Directors inquiring whether the board had authorized Rainville's letter. In its answer to Marchant's complaint, STAWNO also refers to the three letters and their contents and affirmatively alleges that it has discussed the River Run Project several times with Marchant. Among other affirmative defenses, STAWNO asserts immunity for protection of citizens' participation in government under Minn.Stat. §§ 554.01–.05 (2004).

STAWNO moved under Minn. R. Civ. P. 12.03 and Minn.Stat. § 554.02, subd. 2(3), for judgment on the pleadings on all claims. The district court granted STAWNO's motion. On the defamation claim, the court held that Marchant had failed to clearly and convincingly demonstrate that any of the contested statements in the letter conveyed a defamatory meaning and therefore STAWNO was entitled to immunity for its participation in the proceedings. In this appeal, Marchant challenges the district court's determination on one set of the alleged defamatory statements and also appeals the court's allowance of attorneys' fees.

## ISSUE

Did the real-estate developer clearly and convincingly establish that the neighborhood organization tortiously defamed the developer by stating or implying a provably false assertion of fact?

## ANALYSIS

To protect citizens and organizations from lawsuits that would chill their right to publicly participate in government, Minnesota enacted an anti-SLAPP (Strategic Lawsuits Against Public Participation) statute in 1994. *See* 1994 Minn. Laws ch. 566 (describing act as "protecting citizens and organizations from civil lawsuit for

exercising their rights of public participation in government"). Twenty-three other states have enacted similar statutes, ranging from those that only protect speech related to zoning issues and others that protect the "right to speak in any 'public forum' on 'matters of public concern.'" Margaret Graham Tebo, *Offended by a SLAPP: As Lawsuits Against Citizens Expand, Countermeasures Are Rolled Out,* A.B.A. J., Feb. 2005, at 16, 17.

Minnesota's statute permits a party to bring a motion to dismiss on the ground that the claim "materially relates to an act of the moving party that involves public participation." Minn.Stat. § 554.02, subd. 1 (2004). Public participation means "speech or lawful conduct that is genuinely aimed in whole or in part at procuring favorable government action." Minn.Stat. § 554.01, subd. 6 (2004). The district court must grant a motion to dismiss brought under the act unless the responding party demonstrates, by clear and convincing evidence, that the moving party's conduct is not immune from liability because the conduct constitutes a tort or violation of a constitutional right. Minn.Stat. §§ 554.02, subd. 2(2), (3), 554.03 (2004).

Marchant contends that STAWNO is not entitled to immunity for the statements in Rainville's letter because they are tortiously defamatory in stating that STAWNO "met countless times with the developers" and the developers "refused to listen to our concerns." Because this is an appeal from judgment on the pleadings, our consideration focuses on the pleadings' allegations. Minn. R. Civ. P. 12.03. We may also consider documents and statements that are incorporated by reference into the pleadings. *See Martens v. Minn. Mining & Mfg. Co.,* 616 N.W.2d 732, 739 n. 7 (Minn.2000) (limiting review of order for dismissal to documents and statements referred to in complaint). All facts alleged in the complaint must be taken as true and all reasonable inferences drawn in favor of the nonmoving party. *Bodah v. Lakeville Motor Express, Inc.,* 663 N.W.2d 550, 553 (Minn.2003).

Applying these principles, the question we must answer is whether the district court erred in ruling as a matter of law that Marchant did not allege facts that would clearly and convincingly show that STAWNO's statements constitute defamation. To succeed in a claim of defamation, a plaintiff must prove that the defendant made a false and defamatory statement about the plaintiff in an unprivileged communication to a third party and that the statement harmed the plaintiff's reputation in the community. *Weinberger v. Maplewood Review,* 668 N.W.2d 667, 673 (Minn. 2003). We note that, unlike a private plaintiff, a public figure must also prove that the defamatory statement was made with actual malice. *See Jadwin v. Minneapolis Star & Tribune Co.,* 367 N.W.2d 476, 482–83 (Minn.1985) (stating whether plaintiff was public figure, or limited-purpose public figure, is threshold legal issue, which appellate courts review de novo). STAWNO, however, does not assert on appeal that Marchant is a public figure or limited-purpose public figure. For this reason, and because we conclude that STAWNO's statements are not actionable defamation, we do not address the issue of actual malice.

"Only statements that present or imply the existence of fact that can be proven true or false are actionable under state defamation law." *Schlieman v. Gannett Minn. Broad., Inc.,* 637 N.W.2d 297, 308 (Minn.App.2001) (citing *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 18–20, 110 S.Ct. 2695, 2705–06, 111 L.Ed.2d 1 (1990)). "Thus, if it is plain that the speaker is expressing a 'subjective view, an interpretation, a theory, conjecture, or surmise,'

rather than claiming to be in possession of 'objectively verifiable facts,' the statement is not actionable." *Id.* (quoting *Haynes v. Alfred A. Knopf, Inc.,* 8 F.3d 1222, 1227 (7th Cir.1993)). Speech that is properly categorized as parody, loosely figurative, or rhetorical is also constitutionally protected to ensure that public debate will not suffer for lack of imaginative expression and because this type of speech cannot be reasonably interpreted as stating actual facts. *Milkovich,* 497 U.S. at 16–17, 110 S.Ct. at 2704–05.

STAWNO asserts that Rainville's statements are not defamatory because they are opinion rather than fact. In *Milkovich,* the United States Supreme Court rejected the artificial dichotomy between "opinion" and "fact." *Id.* at 19, 110 S.Ct. at 2706; *Weissman v. Sri Lanka Curry House, Inc.,* 469 N.W.2d 471, 472 (Minn. App.1991) (applying *Milkovich* to defamation in employment context). Before *Milkovich,* Minnesota applied constitutional protection for speech by relying on a four-part test drawn from *Janklow v. Newsweek, Inc.,* 788 F.2d 1300, 1302–03 (8th Cir.1986), and *Ollman v. Evans,* 750 F.2d 970, 979 (D.C.Cir.1984). *See Huyen v. Driscoll,* 479 N.W.2d 76, 79 (Minn.App. 1991) (comparing *Janklow* factors to *Milkovich* decision), *review denied* (Minn. Feb. 10, 1992). Since *Milkovich,* this court has stated that the pre-*Milkovich* test remains instructive, but Minnesota courts have not identified new considerations in light of *Milkovich. See id.* at 80 (finding pre-*Milkovich* factors applicable because of their similarity to *Milkovich* formulation).

■ Federal courts, however, have identified post-*Milkovich* considerations for determining whether statements present or imply a provably false assertion of fact. *See, e.g., Partington v. Bugliosi,* 56 F.3d 1147, 1153 (9th Cir.1995) (providing three-part test); *see also Jefferson County Sch. Dist. No. R–1 v. Moody's Investor's Servs., Inc.,* 175 F.3d 848, 853 (10th Cir.1999) (discussing factors for consideration, including medium, phrasing, and context of statement); *Condit v. Dunne,* 317 F.Supp.2d 344, 361 (S.D.N.Y.2004) (identifying similar factors). The post-*Milkovich* formulations examine the statement's broad context, which includes the general tenor of the entire work and its statements, setting, and format; the specific context and content of the statements, including the use of figurative or hyperbolic language and the reasonable expectations of the audience; and whether the statement is sufficiently objective to be susceptible of being proved true or false. *Partington,* 56 F.3d at 1153. We find the federal, post-*Milkovich* considerations instructive and apply them in our determination of whether Marchant alleged facts that show, clearly and convincingly, that STAWNO's statements constitute defamation.

■ The two clauses at issue in this appeal appear in two successive sentences in Rainville's letter. The first is "[w]e have met countless times with the developers" and the second is "[t]hey have refused to listen to our concerns." We read the two clauses together because they "are part of the full communication that may be considered in determining the defamation claim." *Schlieman,* 637 N.W.2d at 308.

Applying *Milkovich* and the standards developed after *Milkovich,* we first consider the broad context of the statements. STAWNO sent the letter to a planning department employee, with copies to public officials. The letter addresses issues that were at the center of a heated debate on a proposed neighborhood housing development. In this type of public debate, an audience expects opposing sides to use persuasive force to convince others to

adopt their position and is less likely to perceive statements as objective assertions of truth. Additionally, the statements appear in a letter rather than a more formal document. The more personal and informal nature of this letter suggests that the statements represent the subjective concerns and perceptions of the letter writer.

Second, we examine the specific context and content of the statement. In this examination, we consider the extent to which the language is figurative or hyperbolic. Although the first sentence contains a factual assertion that STAWNO met with the developers, the term "countless" is more hyperbolic than precise. Intended for dramatic and persuasive effect, it is not used as an accurate and factual assessment of quantity. Further, the letter does not clearly indicate who met with the developers. It states only that "we" met with the developers. This term is sufficiently ambiguous to confuse Marchant, who commented on its vagueness in its response to STAWNO. In this letter, which the complaint incorporates by reference, Marchant expresses confusion on whether "we" refers to Rainville, individually, or to STAWNO as an organization. Marchant concedes Rainville attended meetings that it held with other interested neighborhood organizations. Therefore, if "we" refers to his attendance at these meetings with others aligned with his cause, then the assertion that "[w]e have met" is true. If "we" refers only to STAWNO as an entity, it may still be true if Rainville's presence at those meetings was in his representative capacity as the president of STAWNO.

The word "listen" in the second sentence is obviously used figuratively and means more than simply hearing another person; it incorporates the more subjective qualities of attention and reflection on a specific subject. In a letter expressing its frustration with the project, this statement is most accurately read as an expressed belief that Marchant was not actively considering the issues raised by STAWNO.

■ Third, and finally, we address whether the statement is sufficiently objective to be susceptible of being proved true or false. The first sentence is somewhat capable of verification; the use of "countless" suggests a large number. But the ambiguity on who is meant by the pronoun "we" and whether Rainville alone represents the organization's identity makes the sentence less subject to proof. The second sentence, however, is inherently subjective, reflecting the perception of STAWNO, and is not verifiable through any objective means. Whether Marchant listened to STAWNO's concerns is likely incapable of being proved true or false. And Marchant has not claimed that it significantly changed the plans in response to community concerns. When language is notably ambiguous and the chosen interpretation affects the truth or falsity of the statements, we cannot say that the statements are capable of being proved true or false.

The participation-in-government immunity provided under Minn.Stat. §§ 554.01–554.05 (2004) explicitly requires the nonmoving party to disprove the movant's immunity by clearly and convincingly establishing an underlying tort. Even assuming that all facts alleged in the complaint are true and drawing all reasonable inferences in Marchant's favor, it has not met this high, statutorily imposed burden. *See Swanlund v. Shimano Indus. Corp.*, 459 N.W.2d 151, 154 (Minn.App.1990) (stating that clear and convincing standard requires court to view evidence "through the prism of the substantive evidentiary burden" (quotation omitted)), *review denied* (Minn. Oct. 5, 1990). The district court did not err in dismissing the defamation claim in accord with the immunity provision in the participation-in-government statute.

Marchant also appeals the district court's grant of attorneys' fees to STAWNO but acknowledges that entitlement to costs and attorneys' fees is nondiscretionary under Minn.Stat. § 554.04, subd. 1 ("The court shall award a moving party who prevails in a motion under this chapter reasonable attorney fees and costs associated with the bringing of the motion."). Because STAWNO has prevailed on the defamation issue, it is entitled to the attorneys' fees allowed by the district court.

With respect to Marchant's claims in addition to defamation, the district court held that they were viable only if Marchant succeeded on its defamation claim. Marchant has not separately addressed these claims in its appeal. Although STAWNO has addressed them in its response brief, we decline to extend our review beyond those issues raised by the appellant.

### DECISION

Marchant failed to clearly and convincingly demonstrate that STAWNO's statements constitute defamation. We conclude, in the absence of clear and convincing proof of an underlying tort or violation of constitutional rights, the participation-in-government immunity provided by Minn.Stat. §§ 554.01–554.05 (2004) applies, and we affirm the district court's dismissal of Marchant's claims.

**Affirmed.**