Peter **FREEMAN**, et al., Respondents,

v.

Janette J. **SWIFT**, Appellant.

No. A09–598.

Court of Appeals of Minnesota.

Dec. 29, 2009.

Victor Lund, Mark J. Manderfeld, Mahoney, Dougherty and Mahoney, P.A., Minneapolis, MN, for respondents.

Marshall H. Tanick, Stephen H. Parsons, Mansfield, Tanick & Cohen, P.A., Minneapolis, MN, for appellant.

Considered and decided by LANSING, Presiding Judge; STONEBURNER, Judge; and JOHNSON, Judge.

## OPINION

STONEBURNER, Judge.

Appellant moved to dismiss respondents' defamation action, alleging that the challenged communications are immune from liability under Minn.Stat. § 554.03 (2008). The district court, after reviewing the content of the communications, denied the motion, holding that, because the communications were not directed to "the appropriate government bodies" and were "intentionally aimed at audiences having no connection with the public project and controversy," they were not genuinely aimed at procuring favorable government action and not entitled to immunity. On appeal, appellant asserts that the district court erred as a matter of law in interpreting the statute.

## FACTS

The facts in this matter are not disputed. Nexus is a Minnesota nonprofit corporation that operates a juvenile sex-offender treatment facility. In the spring of 2007, Nexus announced plans to relocate its facility from Onamia to a new, larger facility it proposed to build on 38 acres in Bradbury Township (the property). Relocation involved: (1) purchase, annexation, and rezoning of the property by Onamia for eventual sale to Nexus; (2) extension of city services to the property; and (3) construction of the new, larger facility.

Respondent James D'Angelo, now retired, was the chief executive officer of Nexus during most of the relocation process. Respondent Peter Freeman, a former faculty member at the University of St. Thomas and faculty member at St. Catherine University, is a volunteer member of the Nexus board of directors and was involved in relocation efforts.

Appellant Janette J. Swift is a resident of Bradbury Township and the founder and leader of Onamia Area Citizens for Responsible Growth (OACRG), a citizen-based group in Onamia that vigorously opposed the relocation of the Nexus treatment facility to Bradbury Township. Swift and other members of OACRG attended meetings and presented petitions to government bodies involved, and engaged in other activities directed at preventing the relocation. Swift expressed strong views opposing the relocation. Swift communicated with her state representatives, local and state government offices and departments, and local and state officials, expressing the problems relocation would cause in the neighborhood. Swift was quoted in news articles on the admitted controversy surrounding the relocation, and her letters to the editor were published in the Mille Lacs Messenger newspaper. Swift also established a website and a blog on which she commented about the controversy and how the controversy affected her personally.

D'Angelo and Freeman sued Swift in November 2007 for defamation they allege was published by Swift in specific blog entries about D'Angelo on September 1, 2007, and November 10, 2007, and an email about Freeman sent to a dean of the University of St. Thomas on October 1, 2007, and republished to the dean and St. Thom-

as faculty members on October 16, 2007. On December 29, 2007, after the complaint was served, Swift reposted the September 1, 2007, blog entry about D'Angelo.

Swift answered the complaint, asserting, among other affirmative defenses, that the complained-of conduct constituted "public participation," immune from liability under Minn.Stat. § 554.03. She moved to dismiss the lawsuit under Minn.Stat. § 554.02, subd. 2(3) (2008). The district court denied the motion to dismiss, holding that the statements were not genuinely aimed at procuring favorable government action and therefore are not entitled to immunity under the statute. The district court also concluded that Freeman and D'Angelo "presented clear and convincing evidence that the statements at issue are not immune because Swift's conduct constitutes allegations of the tort of defamation, which should proceed to trial." This appeal followed.

## ISSUES

I. Did the district court err in holding that Swift's (1) email directed to a dean of the university that employed Freeman and distributed to faculty members, asking for the dean's assistance in controlling Freeman's conduct as described by Swift; (2) blog entry about Swift's reaction to what she thought was news that D'Angelo had committed suicide, with statements about D'Angelo's character and conduct; and (3) blog entry stating that D'Angelo had made "death threats," did not constitute conduct or speech genuinely aimed in whole or in part at procuring favorable government action, and therefore are not entitled to immunity under Minn.Stat. § 554.03?

II. Did the district court err in concluding that Freeman and D'Angelo presented clear and convincing evidence that Swift's conduct or speech was tortious and therefore not immune under Minn.Stat. § 554.03?

## ANALYSIS

### I. The anti-SLAPP [1] statute

■ Swift sought summary judgment dismissing the defamation complaint, asserting that the challenged statements are immune from liability under Minn.Stat. § 554.03 (the anti-SLAPP statute). The anti-SLAPP statute protects citizens' public participation in government. *Marchant Inv. & Mgmt. Co. v. St. Anthony West Neighborhood Org., Inc.*, 694 N.W.2d 92, 94 (Minn.App.2005). The anti-SLAPP statute "applies to any motion in a judicial proceeding to dispose of a judicial claim on the grounds that the claim materially relates to an act of the moving party that involves public participation." Minn.Stat. § 554.02, subd. 1 (2008).

Public participation is defined as "speech or lawful conduct that is genuinely aimed in whole or in part at procuring favorable government action." Minn.Stat. § 554.01, subd. 6 (2008). The statute protects public participation by providing immunity from liability for "[l]awful conduct or speech that is genuinely aimed in whole or in part at procuring favorable government action ... unless the conduct or speech constitutes a tort or a violation of a person's constitutional rights." Minn.Stat. § 554.03.

A district court must grant a motion to dismiss an action under this section "unless the court finds that the responding party [who has the burden of persuasion on the motion] has produced clear and

---

1. SLAPP is the acronym for "Strategic Lawsuit Against Public Participation." *Marchant Inv. & Mgmt. Co. v. St. Anthony West Neigh-* *borhood Org., Inc.,* 694 N.W.2d 92, 94 (Minn. App.2005).

convincing evidence that the acts of the moving party are not immunized from liability under section 554.03." Minn.Stat. § 554.02, subds. 2, 3 (2008). A summary-judgment decision that is based on the application of a statute to undisputed facts results in a legal conclusion that is reviewed de novo. *Weston v. McWilliams & Assocs., Inc.,* 716 N.W.2d 634, 638 (Minn. 2006).

## II. Public participation

There are very few cases in Minnesota involving the anti-SLAPP statute, and this is the first case involving a determination of what constitutes public participation, defined as "speech or lawful conduct that is genuinely aimed in whole or in part at procuring favorable government action." Minn.Stat. § 554.01, subd. 6. "Statutory construction is ... a legal issue reviewed de novo." *Lee v. Fresenius Med. Care, Inc.,* 741 N.W.2d 117, 122 (Minn.2007). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2008). If a statute, construed according to ordinary rules of grammar, is unambiguous, a court may engage in no further statutory construction and must apply its plain meaning. *State by Beaulieu v. RSJ, Inc.,* 552 N.W.2d 695, 701 (Minn.1996).

In this case, "favorable government action" would be any government action preventing relocation of the Nexus treatment facility to Bradbury Township. The narrow question in this appeal is whether the challenged speech was "genuinely aimed in whole or in part at procuring" such government action.

The American Heritage Dictionary of the English Language, 758 (3rd ed. 1992), defines "genuinely," in relevant part, as "[a]ctually possessing the alleged or apparent attribute or character," "authentic,"

"[a]ctual, real." From this, we conclude that the use of "genuinely" requires an analysis of whether the speech was aimed at procuring favorable government action that is not solely determined by post-litigation statements in which the speaker asserts subjective intent that the speech was to procure such action.

"Aimed" is defined, in relevant part, as "[t]o direct toward ... an intended goal or mark." *Id.* at 37. And "procuring" is defined, in relevant part, as "[t]o get by special effort," "[t]o bring about; effect." *Id.* at 1444. We conclude that the statute is unambiguous and can be construed based solely on the plain language used in the statute.

Applying a plain-language interpretation of the words "genuinely aimed in whole or in part at procuring favorable government action," as used in sections 554.01, subd. 6 and 554.03, to the specific speech at issue in this case leads us to conclude that the district court correctly held that Freeman and D'Angelo met their burden of proof by clear and convincing evidence that the challenged speech is not entitled to the immunity provided for public participation by the anti-SLAPP statute.

█ The defamation lawsuit involves three specific communications. Swift argues that these specific communications cannot be separated from all other conduct and speech she has engaged in during the controversy over the relocation of the Nexus facility and that they are immune because, in this context, the challenged statements are materially related to her public participation in the controversy. It is undisputed that Swift made the challenged communications in the context of her public participation, giving rise to an analysis under the anti-SLAPP statute because the communications are materially related to her public participation. But under the

plain language of the statute, the mere fact that discrete communications are made in the context of public participation does not confer immunity. To be immune from liability, the involved speech must satisfy the conditions set out in section 554.03, the first condition being that the speech be found to be aimed in whole or in part at procuring favorable government action.

■ The district court based its decision, in part, on the fact that none of the communications in question was addressed "direct[ly] to" decision-making government entities. We agree with Swift that the anti-SLAPP statute does not limit immunity to conduct and speech addressed directly to decision-making government entities. But the district court, having examined the content, also found that the communications were "intentionally aimed at audiences *having no connection with the public project and controversy.*" (Emphasis added.) And this finding supports a conclusion that the communications were not aimed at procuring favorable government action.

In *Penllyn Greene Assocs., L.P. v. Clouser,* 890 A.2d 424, 433 (Pa. Commw.Ct.2005), the Commonwealth Court of Pennsylvania held that Pennsylvania's anti-SLAPP statute, which other than being limited to environmental controversies, is similar to Minnesota's statute,[2] protects both communications to the government and communications to third parties, with the caveat that "[w]hen determining whether a communication is entitled to immunity, the court must look to the nature of the statement keeping in mind the intended audience and the purpose of the communication." We agree with this reasoning and hold that Minnesota's anti-SLAPP statute covers communications addressed to third parties as well as communications addressed to a government entity, with the caveat that the determination of whether a communication is entitled to immunity under section 554.03 depends on the nature of the statement, the purpose of the statement, and the intended audience.

Swift argues that her statements are similar to statements found to be immune under similar anti-SLAPP statutes considered in *Schelling v. Lindell,* 942 A.2d 1226 (Me.2008), and *Plante v. Wylie,* 63 Mass. App.Ct. 151, 824 N.E.2d 461 (2005). We disagree.

In *Schelling,* the Supreme Judicial Court of Maine held that the challenged statement was contained in a letter to the editor that was "arguably intended to effect reconsideration of" recently enacted legislation. 942 A.2d at 1231. In contrast, here there is no basis for a determination that the challenged statements in Swift's email to the dean or the statements contained in the blog were made in the context of encouraging any government action.

In *Plante,* the challenged statement was made by an attorney on behalf of a conservation trust in the context of a settlement proposal. 824 N.E.2d at 464. The Massachusetts anti-SLAPP statute delineates specific categories of protected petitioning activities and includes "*any written or oral*

---

**2.** 27 Pa. Cons.Stat. Ann. § 8302(a) (2009), provides immunity from civil liability, in relevant part, to a person that, pursuant to federal or state law, makes an oral or written communication to a government agency relating to enforcement or implementation of an environmental law or regulation "where the ... communication is aimed at procuring favorable governmental action." Under the Pennsylvania statute, communications to the government include "written or oral statement[s] or writing[s] made ... in connection with an issue under consideration or review by a legislative, executive or judicial body or any other official proceeding authorized by law." 27 Pa. Cons.Stat. Ann. § 8301 (2009).

*statement made in connection with an issue under consideration or review* by a [government entity]." *Id.* at 467 (citing Mass. Gen. Laws ch. 231, § 59H (2000)). The Appeals Court of Massachusetts construed this provision "to include statements made by one participant in a pending governmental proceeding to another in an effort to settle the controversy." *Id.* Because the specifically challenged statement, although involving trust interests that were separate from matters before the decision-making government entity, was "an integral part of the issue under consideration by [the government entity]," it could not be considered in isolation. *Id.* at 468.

We first note that the wording of the Massachusetts statute is significantly different from the wording in Minnesota's statute: Minnesota's anti-SLAPP statute does not confer immunity on *any statement* made *in connection with* a controversy under government consideration or review. And, although Swift's challenged statements (with the possible exception of republication of the September blog) were made during the time of her advocacy in the controversy, none of the statements is integral to any part of the controversy.

■ Despite Swift's affidavit expressing that her subjective intent in making the statements was to procure favorable government action, the content of the statements plainly does not support this assertion. In her email addressed to a St. Thomas dean, Swift states that she is writing "concerning one of your faculty members who is engaging in unethical, immoral, and possibly even illegal behavior—which reflects directly upon your social work department at St. Thomas University." The letter describes why Swift is opposed to relocation of Nexus and expresses Swift's "hope that [the dean] will talk to [Freeman] about finding a different

location, and about respecting the citizens he is abusing." The letter also states, "[Freeman] needs to know how badly he is hurting us. And he needs to stop. Can you help us? Can you tell him?" The letter plainly calls only for non-government action against Freeman personally. Any argument that, by attempting to turn Freeman's university colleagues against him, Swift hoped to procure favorable government action in the relocation controversy is too attenuated to meet the statutory requirement that the speech be "genuinely aimed" at procuring favorable government action.

■ Swift's September 2007 blog, in the context of expressing Swift's reaction at what she thought was a report of D'Angelo's suicide, contains numerous derogatory statements about D'Angelo with only a brief reference to the relocation controversy. The November 2007 blog that accuses D'Angelo of making death threats addresses the controversy only in terms of D'Angelo's alleged treatment of Swift. Although the blog audience may well include those who Swift could hope would take up her cause, the challenged statements plainly are not directed at bringing about any government action, but, like the email to the dean, are aimed at creating ill-will toward D'Angelo and cannot be said to have been "genuinely aimed" at procuring favorable government action in the relocation controversy.

Swift's supporting affidavits assert the general usefulness of the internet and blogging to aid public participation in government, but none of the affiants opines that the challenged communications were genuinely aimed at procuring favorable government action. One affiant states that she followed Swift's blog and website for over a year and, as a result, was led to "speak up" on the controversy by posting statements on Swift's blog and writing to

local government officials. But this affidavit does not specifically address the challenged blog entries and therefore is not relevant to analysis of whether the challenged blog entries were genuinely aimed at procuring favorable government action.

### III. No immunity for tortious speech

The anti-SLAPP statute, by its plain language, does not provide immunity for defamation, even if the defamatory speech is "genuinely aimed in whole or in part at procuring favorable government action." Minn.Stat. § 554.03. Under the statute, if Swift's speech had been found to be genuinely aimed in whole or in part at procuring favorable government action, Swift would have been entitled to dismissal of the defamation action unless the district court found that Freeman and D'Angelo produced clear and convincing evidence that Swift's speech constitutes defamation. Minn.Stat. § 554.02, subd. 3 (stating that "the court shall grant the motion [to dismiss] ... unless the court finds that the responding party has produced clear and convincing evidence that the [challenged acts] are not immunized from liability under section 554.03"); Minn.Stat. § 554.03 (stating, in relevant part, that speech that constitutes a tort is not immunized).

Because we affirm denial of Swift's motion to dismiss on the basis that the challenged speech is not genuinely aimed in whole or in part at procuring favorable government action, we decline to address the issue of whether Freeman and D'Angelo produced clear and convincing evidence that the challenged statements constitute defamation. We note, however, that we have previously held that, at the early stage of the proceedings in which motions to dismiss under the anti-SLAPP statute occur, "we assume that respondents have met their burden if they have presented clear and convincing evidence on the elements of their claims." *Special Force Ministries v. WCCO T.V.*, 584 N.W.2d 789, 792 (Minn.App.1998). It appears that the district court applied the correct standard in addressing this alternative basis for denying Swift's motion to dismiss under section 554.03.

### DECISION

Because the nature, purpose, and intended audience of the challenged communications demonstrate that the involved speech is not genuinely aimed in whole or in part at procuring favorable government action, we conclude that D'Angelo and Freeman met their burden of proving by clear and convincing evidence that the challenged speech is not entitled to immunity under Minn.Stat. § 554.03.

**Affirmed.**