**NEXUS, Respondent,**

v.

**Janette J. SWIFT, Appellant.**

**No. A09–2060.**

Court of Appeals of Minnesota.

July 20, 2010.

Victor Lund, Mark J. Manderfeld, Mahoney, Dougherty and Mahoney, P.A., Minneapolis, MN, for respondent.

Marshall H. Tanick, Brian N. Niemczyk, Mansfield, Tanick & Cohen, P.A., Minneapolis, MN, for appellant.

Considered and decided by HUDSON, Presiding Judge; CONNOLLY, Judge; and MUEHLBERG, Judge.*

## OPINION

CONNOLLY, Judge.

Appellant challenges the district court's denial of her motion to dismiss respondent's defamation suit pursuant to Minnesota's anti-SLAPP statute. The statute immunizes from liability "[l]awful conduct or speech that is genuinely aimed in whole or in part at procuring favorable government action ... unless the conduct or speech constitutes a tort or a violation of a person's constitutional rights." Minn.Stat. § 554.03. The district court held that to the extent the anti-SLAPP statute required the district court to determine by clear and convincing evidence whether appellant defamed respondent before full discovery could be had and without submitting the case to the jury, the statute violated respondent's constitutional rights to

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

due process and a jury trial. The district court concluded that dismissal was not warranted because respondent pleaded the appropriate elements of a defamation claim. We hold that the anti-SLAPP statute does not violate respondent's constitutional rights to due process of law and to a jury trial. Because the district court applied the incorrect legal standard in evaluating appellant's motion to dismiss, we reverse and remand for further proceedings.

## FACTS

In its complaint, respondent Nexus alleged the following facts, which appellant Janette J. Swift admitted in her answer. Nexus is a Minnesota nonprofit corporation that operates a residential treatment facility for juvenile sex offenders in Onamia. Nexus planned to build a new residential treatment facility for juvenile sex offenders approximately two miles from the current location. Swift resides in Bradbury, approximately one-half mile from the location where Nexus planned to build the new facility. Swift opposed the proposed location of the new facility. Swift expressed her opposition at public hearings and on her two websites; some of the statements she made in opposing the location of the new facility form the basis of this lawsuit.

At a March 2008 public hearing before the Onamia City Council, Swift stated that a young boy under Nexus's care "died at the hands of one of [its] employees." She then posted a video on YouTube showing portions of the hearing interspersed with text segments. These text segments identified the youth and stated that he was "asphyxiated" and "killed" by a Nexus employee in 2001 and that the death was "ruled a homicide." Shortly before the end of the YouTube video, the text stated: "Nexus Treatment Centers getting away

with MURDER." The video then ended with a picture of the deceased youth.

On one of her websites, Swift posted a link to the video. Swift also posted an "obituary" on her website, which stated that the youth "was killed by a NEXUS staff member, while in a prone restraint hold." She stated that the "autopsy determined that [he] was suffocated to death" and that his "death was ruled a homicide."

After counsel for Nexus wrote to Swift demanding that she retract and remove the above statements, Swift posted a blog entry stating that "these are BAD PEOPLE," referring to Nexus. She stated that in her, "the people who run Nexus are deficient." She stated that Nexus representatives harassed her by "employ[ing] bullying tactics" and that "[t]hey have shown a propensity for punishment and a sadistic approach to dealing with adversaries." According to this blog entry, "Nexus certainly is an expert in the field of abuse. It is, after all, their specialty." Swift reiterated the claim that Nexus was "getting away with murder": "When I say that Nexus is getting away with murder, I'm not just referring to the little boy that one of their employees killed. 'Getting away with murder' is a phrase which means that someone is perpetrating bad behavior without any consequences. Nexus certainly fits the bill."

Nexus filed a complaint including the above allegations in district court in June 2008. Although not admitted by Swift, Nexus also alleged that Swift published false and defamatory material on her websites about Nexus's former CEO and sent false and defamatory e-mails to the supervisor and coworkers of a member of Nexus's volunteer board of directors. Nexus alleged that its employee did not kill the boy in question. No one was ever charged with murder in the case. Nexus alleged that the staff member involved restrained

the boy in accordance with procedures approved by the State of Iowa, which is where the incident occurred. According to Nexus, "No one except [Swift] has ever called the tragic accident 'murder.'" Nexus noted that child-endangerment charges were initially brought against the employee, but "were dropped before trial upon motion of the prosecution when the validity of the opinion of the medical examiner, the only person who called the event an 'asphyxiation homicide,' was questioned by the state's own consulting expert." Nexus alleged that Swift's blog and YouTube postings embarrassed Nexus, injured its reputation, and lowered its position in the esteem of the public. Nexus also alleged that the statements were made with actual malice and reckless disregard for the truth or falsity of the statements.

Swift's answer asserted that her statements were protected by the First Amendment of the United States Constitution and Article I, section 3 of the Minnesota Constitution, and that she was immune from suit under the anti-SLAPP statute. In May 2009, Swift moved for dismissal pursuant to the anti-SLAPP statute and for summary judgment pursuant to Rule 56.01 of the Minnesota Rules of Civil Procedure. In her memorandum of law in support of her motion, Swift argued that the anti-SLAPP statute applied and that her statements were not defamatory.

In its memorandum in opposition to Swift's motion, Nexus argued that the anti-SLAPP statute was inapplicable because Swift was not petitioning the government via her Internet posts and that her actions were not genuinely aimed at procuring favorable government action. Nexus also argued that if the statute mandated dismissal of its defamation action, the statute violated Nexus's constitutional rights to due process, equal protection, a certain remedy in law, and a jury trial.[1] Nexus also argued that it had presented clear and convincing evidence of defamatory statements accusing it falsely of murder. Nexus argued in the alternative that it should be allowed to conduct discovery before the court determined any issues of malice because Swift brought the motion to dismiss instead of answering interrogatories and document requests aimed at discovering what information was available to her before she made the various statements. This claim was essentially that it would be unfair to require Nexus to prove malice, which depended on the information Swift had before making the statements, before Nexus was allowed to conduct discovery on that issue.

Swift filed a reply memorandum in which she reiterated her earlier arguments—that the statute applied, that "getting away with murder" was a constitutionally protected opinion, and that it was substantially true that Nexus or its employee got away with murder because of the medical examiner's initial determination that the youth's death was a homicide. Swift also argued that the statute did not violate any constitutional provisions.

In October 2009, the district court issued an order denying Swift's motion to dismiss. The district court treated Swift's motion as a motion for judgment on the pleadings pursuant to Rule 12.02(e) of the Minnesota Rules of Civil Procedure. The district court refused to consider evidence outside of the pleadings or to convert the motion into a motion for summary judgment. The district court found that discovery was warranted, and that because the case involved only the claim of defamation, the only discovery that could be appropriately ordered was "full" discovery. The district court held that if the anti-

---

1. Nexus subsequently abandoned its equal- protection claim.

SLAPP statute were construed to require it to grant Swift's motion, the statute would violate Nexus's due-process rights. It also held that the statute, if construed in such a manner, would violate Nexus's right to a jury trial to the extent that a jury trial would be warranted on the issue of whether Swift defamed Nexus. The district court declined to address the constitutional argument under the Remedies Clause of the Minnesota Constitution. The district court then held that Nexus had alleged the appropriate elements of defamation and "[found] that facts could be introduced consistent with the pleading that would support granting the relief demanded." The district court declined to address Nexus's argument about discovery on the issue of malice because it intended to order full discovery. This interlocutory appeal follows.

## ISSUES

I. Does application of Minnesota's anti-SLAPP statute to Nexus's defamation action against Swift violate Nexus's constitutional right to due process of law or to a jury trial?

■ II. Did the district court err in denying Swift's motion to dismiss on the ground that she was immune from liability under the anti-SLAPP statute?

## ANALYSIS

**I. The anti-SLAPP statute does not violate the United States or Minnesota Constitution.**

■ Nexus challenges the constitutionality of the anti-SLAPP statute on the

grounds that the statute violates its right to due process of law and its right to a jury trial.[2] Nexus's constitutional challenges present questions of law, which we review de novo. *State v. Schwartz*, 628 N.W.2d 134, 138 (Minn.2001). In reviewing the constitutionality of a statute, courts must, if possible, interpret the statute to uphold its constitutionality. *Fedziuk v. Comm'r of Pub. Safety*, 696 N.W.2d 340 (Minn.2005). Because statutes are presumed constitutional, *Sartori v. Harnischfeger Corp.*, 432 N.W.2d 448, 453 (Minn. 1988), the party challenging the constitutionality of a statute "bears the very heavy burden of demonstrating beyond a reasonable doubt that the statute is unconstitutional," *State v. Merrill*, 450 N.W.2d 318, 321 (Minn.1990). The "power to declare a statute unconstitutional should be exercised with extreme caution and only when absolutely necessary." *In re Haggerty*, 448 N.W.2d 363, 364 (Minn.1989).

As an initial matter, we observe that at least 24 states have passed anti-SLAPP statutes. *See* Laura Long, Note, *Slapping Around the First Amendment*, 60 Okla. L.Rev. 419, 421 n.27, 422 n.28 (2007) (citing statutes). Nexus does not cite, and we do not find, any authority holding any of these statutes unconstitutional. Rather, the anti-SLAPP statutes that have been challenged have been upheld. *See, e.g., Equilon Enters., LLC v. Consumer Cause, Inc.*, 29 Cal.4th 53, 124 Cal.Rptr.2d 507, 52 P.3d 685, 692 (2002); *Lee v. Pennington*, 830 So.2d 1037, 1043 (La.Ct.App.2002);

---

**2.** In district court, Nexus also challenged the anti-SLAPP statute's constitutionality under the Remedies Clause of the Minnesota Constitution. *See* Minn. Const. art. I, § 8; *see also Schermer v. State Farm Fire & Cas. Co.*, 721 N.W.2d 307, 316 (Minn.2006) (discussing Remedies Clause). Because this argument was not addressed by the district court and is not maintained on appeal, we do not address

it. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) ("A reviewing court must generally consider only those issues that the record shows were presented and considered by the trial court in deciding the matter before it." (quotation omitted)); *Balder v. Haley*, 399 N.W.2d 77, 80 (Minn.1987) (holding that issues not argued in appellate briefs are usually deemed waived).

*Hometown Props., Inc. v. Fleming*, 680 A.2d 56, 60 (R.I.1996); *Anderson Dev. Co. v. Tobias*, 116 P.3d 323, 338 (Utah 2005).

### A. Due Process

We first address Nexus's argument, and the district court's holding, that the anti-SLAPP statute violated Nexus's right to due process of law. For the reasons set forth below, we conclude that the anti-SLAPP statute does not violate Nexus's due-process rights.

■ The United States and Minnesota Constitutions prevent the government from depriving individuals of life, liberty, or property without due process of law. U.S. Const. amend. XIV; Minn. Const. art. I, § 7. "The due process protection provided under the Minnesota Constitution is identical to the due process guaranteed under the Constitution of the United States." *Sartori*, 432 N.W.2d at 453.

■ The threshold requirement of any due-process claim is that the government has deprived a person of a constitutionally protected liberty or property interest; in the absence of a liberty or property interest, a right to due process does not accrue. *DePree v. Saunders*, 588 F.3d 282, 289 (5th Cir.2009). If this threshold requirement is met, procedural due process guarantees "reasonable notice and an opportunity to be heard ... at a meaningful time and in a meaningful manner," and any trial must be held before a fair tribunal. *Karpova v. Snow*, 497 F.3d 262, 270 (2d Cir.2007) (quotation omitted).

Although not fully articulated by Nexus or the district court, it is apparent from the context of this case that Nexus's alleged interest lies in its reputation—that is, in not being defamed by Swift. The Supreme Court has held that a party's interest in its reputation, although important and often protected by state tort law,

does not amount to a constitutionally protected liberty or property interest, even when the party was defamed by a state officer. *Paul v. Davis*, 424 U.S. 693, 712, 96 S.Ct. 1155, 1165–66, 47 L.Ed.2d 405 (1976). The federal courts of appeals have fashioned a "stigma plus" or "reputation plus" test, which requires a party claiming a due-process violation to show, in addition to defamatory damage to its reputation, some other tangible harm or change in status. *See, e.g., Zutz v. Nelson*, 601 F.3d 842, 849 (8th Cir.2010); *Velez v. Levy*, 401 F.3d 75, 89 (2d Cir.2005); *Orange v. District of Columbia*, 59 F.3d 1267, 1274 (D.C.Cir.1995).

■ In this case, Nexus has only alleged that it was defamed by Swift, a nongovernmental actor. We find no protected liberty or property interest implicated by this case. But even if Nexus had identified a constitutionally protected interest of which it was deprived by the government, thereby creating a right to due process, we would conclude that the anti-SLAPP statute does not deny Nexus the right to due process of law. Nexus brought its defamation claim in district court, and it is undisputed that Nexus had access to a fair hearing before an impartial judicial officer. *See Karpova*, 497 F.3d at 270–71 (explaining that due process only requires a fair and meaningful opportunity to be heard).

■ To the extent that Nexus's argument or the district court's decision can be construed as based on the anti-SLAPP statute's procedural hurdles to bringing a defamation action, we observe that due process does not prevent the legislature from "abrogat[ing] a common law right without providing a reasonable substitute if it is pursuing a permissible, legitimate legislative objective." *Sartori*, 432 N.W.2d at 453. Minnesota's anti-SLAPP statute seeks to vindicate the important constitu-

tional right to publicly participate in government. *Marchant Inv. & Mgmt. Co. v. St. Anthony W. Neighborhood Org., Inc.,* 694 N.W.2d 92, 94 (Minn.App.2005). This is surely a permissible and legitimate legislative objective. Moreover, the anti-SLAPP statute does *not* abrogate Nexus's potential defamation claim, but instead specifically provides that tortious speech is not statutorily protected. *See* Minn.Stat. § 554.03.

We conclude that application of the anti-SLAPP statute to Nexus's defamation claim against Swift does not violate the right to due process of law guaranteed by the Fourteenth Amendment of the United States Constitution and Article I, section 7 of the Minnesota Constitution.

### B. Jury Trial

■ Nexus also argued, and the district court concluded, that the anti-SLAPP statute violated Nexus's constitutional right to a jury trial. We disagree.

The United States and Minnesota Constitutions guarantee the "right of trial by jury" in civil suits involving claims at law. U.S. Const. amend. VII; Minn. Const. art. I, § 4. The Seventh Amendment of the United States Constitution and Article I, section 4 of the Minnesota Constitution "protect[ ] essentially the same jury trial rights." *Onvoy, Inc. v. ALLETE, Inc.,* 736 N.W.2d 611, 617 (Minn.2007).

■ The constitutional jury-trial right in a civil suit protects the jury's findings—and right to make findings—on all facts material to a legal claim, including any operative facts common to legal and equitable claims if they are both tried in the same action. *Id.* at 616–18; *accord Palace Exploration Co. v. Petroleum Dev. Co.,* 316 F.3d 1110, 1119 (10th Cir.2003); *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.,* 299 F.3d 643, 650 (7th Cir.2002). The jury-trial right does

not protect the *existence* of any particular common-law cause of action, *Martin v. Telectronics Pacing Systems, Inc.,* 105 F.3d 1090, 1101 (6th Cir.1997), but it does ensure that in a common-law suit tried by a jury, a judge's determination will not prevent the jury from resolving genuine issues of material fact, *Marseilles,* 299 F.3d at 650. A common-law claim for defamation presents an action at law to which the right to a trial by jury attaches. *See Riley v. Jankowski,* 713 N.W.2d 379, 396–97 (Minn.App.2006), *review denied* (Minn. July 19, 2006) (holding that jury-trial right not violated by administrative hearing pertaining to statutory claim lacking some elements of defamation claim).

■ In order to determine whether the anti-SLAPP statute violates Nexus's constitutional right to a jury trial, it is necessary to examine how the statute operates. The anti-SLAPP statute "protect[s] citizens and organizations from lawsuits that would chill their right to publicly participate in government." *Marchant,* 694 N.W.2d at 94. A party may move "to dispose of a judicial claim on the grounds that the claim materially relates to an act of the moving party that involves public participation," Minn.Stat. § 554.02, subd. 1, which is defined as "speech or lawful conduct that is genuinely aimed in whole or in part at procuring favorable government action," Minn.Stat. § 554.01, subd. 6. The district court must suspend discovery pending the final disposition of the motion to dismiss, but it may order "specified and limited discovery" on a showing of good cause. Minn.Stat. § 554.02, subd. 2(1). The district court must grant the motion to dismiss unless the responding party shows by clear and convincing evidence that the acts of the moving party are not immunized from liability. *Id.,* subd. 2(3). Only lawful, non-tortious conduct or speech that is genuinely aimed at procur-

ing favorable government action is immunized from liability. Minn.Stat. § 554.03.

■ Because this is an appeal from the district court's decision whether to grant judgment on the pleadings, the court's consideration focuses on the pleadings' allegations. *Marchant,* 694 N.W.2d at 95; Minn. R. Civ. P. 12.03. Documents and statements that are incorporated by reference into the pleadings may also be considered. *Marchant,* 694 N.W.2d at 95. "All facts alleged in the complaint must be taken as true and all reasonable inferences drawn in favor of the nonmoving party." *Id.*

■ Clear and convincing evidence "requires more than a preponderance of the evidence but less than proof beyond a reasonable doubt." *Weber v. Anderson,* 269 N.W.2d 892, 895 (Minn.1978). This standard is met when the matter sought to be proved is "highly probable." *State v. Kennedy,* 585 N.W.2d 385, 389 (Minn. 1998). Thus, Nexus bore a heightened burden of showing that Swift's statements were highly probably defamatory.

■ The district court's apparent concern was that the anti-SLAPP statute required it to determine at the outset whether Swift's statements were defamatory, thus usurping the jury's role of making findings on the facts material to the defamation claim. If Nexus is entitled to a jury trial, it has a constitutional right to have the jury determine all triable issues of material fact. *See Onvoy,* 736 N.W.2d at 616–18. The jury-trial right is not affected by Nexus's burden under Minn.Stat. § 554.02, subd. 2(3), of producing clear and convincing evidence that Swift's speech was defamatory and therefore not immune from liability under Minn.Stat. § 554.03.

■ As this court held in *Marchant,* a motion to dismiss for failure to state a claim that asserts immunity under the anti-SLAPP statute remains based on the judgment-on-the-pleadings standard. 694 N.W.2d at 95. In conjunction with the statutory clear-and-convincing standard, this means that the district court was required to determine whether the allegations in the pleadings and the documents and statements incorporated therein, when all facts alleged in the complaint were taken as true and all reasonable inferences were drawn in Nexus's favor, permitted it to conclude that Nexus had produced clear and convincing evidence that Swift's statements were defamatory. *See id.* The question is not whether Nexus will ultimately prove defamation; the question is whether Nexus produced clear and convincing evidence of defamation *in light of the Rule 12 standard for granting judgment on the pleadings.*

■ We note that Swift moved for dismissal and also for summary judgment, but that the district court declined to treat Swift's motion as one for summary judgment because it believed further discovery was necessary before it could decide a summary-judgment motion.[3] To the extent that the district court believed it lacked authority to order discovery, it was mistaken—the anti-SLAPP statute provides the district court with authority to order "specified and limited discovery" on any issue where discovery is warranted following the plaintiff's motion for discovery "and after a hearing and for good cause shown." Minn.Stat. § 554.02, subd. 2(1). Generally, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

---

**3.** Swift does not appear to challenge the district court's decision to treat her motion to dismiss as one for judgment on the pleadings rather than summary judgment.

issue as to any material fact and that either party is entitled to judgment as a matter of law." Minn. R. Civ. P. 56.03. The district court must view the evidence in the light most favorable to the nonmoving party. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76–77 (Minn.2002). Similar to the above Rule 12 analysis, under the statutory clear-and-convincing standard, to resist a motion for summary judgment Nexus was required to produce clear and convincing evidence *in light of the Rule 56 standard for granting summary judgment.*

■■■■■ Regardless of whether a motion to dismiss asserting immunity under Minn.Stat. § 554.03 is made at the stage of litigation when judgment on the pleadings may be appropriate or when summary judgment may be appropriate, ultimate determinations of fact are not required by the clear-and-convincing standard set forth in Minn.Stat. § 554.02, subd. 2(3). These standards require that reasonable inferences be drawn in favor of the nonmoving party, which is unchanged by the anti-SLAPP statute. The test is merely whether, in light of those inferences and the view of evidence mandated by the standard for granting judgment on the pleadings or summary judgment, the plaintiff has shown that the defendant's speech or conduct was tortious or otherwise unlawful. The constitutional right to a jury trial does not prevent all pretrial determinations by a judge; it provides parties with the right to have triable issues of material fact decided by the jury. *Marseilles*, 299 F.3d at 650. We therefore conclude that application of the anti-SLAPP statute to Nexus's defamation action does not violate the right to a jury trial protected by the Seventh Amendment of the United States Constitution and Article I, section 4 of the Minnesota Constitution.

## II. The district court erred in denying Swift's motion to dismiss by not conducting the analysis under the appropriate standard as required by the anti-SLAPP statute.

### A. Defamation

■■■■■ When a defendant brings an anti-SLAPP motion to dismiss, the district court must first resolve the threshold question of whether the anti-SLAPP statute is applicable. *Middle–Snake–Tamarac Rivers Watershed District v. Stengrim*, 784 N.W.2d 834, 841 (Minn.2010). An anti-SLAPP motion may be brought "to dispose of a judicial claim on the grounds that the claim materially relates to an act of the [defendant] that involves public participation." Minn.Stat. § 554.02, subd. 1. The defendant bears a "minimal burden" of making a threshold showing that the plaintiff's underlying claim materially relates to an act of the defendant's that involved public participation. *Stengrim*, 784 N.W.2d at 841. Once the defendant has made this threshold showing and the district court has made its preliminary determination that the anti-SLAPP statute is properly invoked, the burden then shifts to the plaintiff to "show by clear and convincing evidence that the acts at issue are not immune under Minn.Stat. § 554.03." *Id.* at 841; *see also* Minn.Stat. § 554.02, subd. 2 (setting forth anti-SLAPP procedure that applies after the district court makes its preliminary determination under Minn.Stat. § 554.02, subd. 1).

■■■■■ Assuming that Swift made the threshold showing discussed above, in response to Swift's motion to dismiss, Nexus was required to produce clear and convincing evidence that Swift's actions were not immunized from liability. *See* Minn.Stat. § 554.02, subd. 2(3). Defamatory speech does not fall within the ambit of the anti-SLAPP statute. Minn.Stat. § 554.03. On

appeal from denial of a motion for judgment on the pleadings, we review de novo whether the plaintiff set forth a legally sufficient claim for relief. *Williams v. Bd. of Regents of Univ. of Minn.*, 763 N.W.2d 646, 651 (Minn.App.2009). Review of a motion for judgment on the pleadings focuses on the pleadings' allegations and any documents and statements incorporated by reference into the pleadings. *Marchant*, 694 N.W.2d at 95. All reasonable inferences must be drawn in Nexus's favor, and all of the facts alleged in the complaint must be taken as true. *See id.* As discussed above, this standard required the district court to determine whether, based on these inferences and the standard for granting judgment on the pleadings, Nexus had produced clear and convincing evidence that Swift's statements were not immune from liability.

The district court did not apply the appropriate standard in addressing the elements of a defamation claim. In light of its erroneous holdings that the anti-SLAPP statute violated Nexus's constitutional rights to due process and to a jury trial, the district court did not apply the clear-and-convincing standard in its decision. Instead, the district court merely found that Nexus "alleged the appropriate elements of defamation." To defeat the motion to dismiss, Nexus was required to present clear and convincing evidence that Swift's statements were defamatory. Again, factual allegations and reasonable inferences must be construed in favor of Nexus, and the issue then becomes whether it is "highly probable" that Swift's statements were defamatory. *Kennedy*, 585 N.W.2d at 389 (internal quotation marks omitted). The clear-and-convincing standard mandated by the anti-SLAPP statute also requires consideration of the defenses raised by Swift, including whether her statements were privileged, whether her statements were true, and whether her statements were opinions or rhetoric incapable of being proved true or false.

Because the district court did not discuss how the evidence applied to Nexus's defamation claim, failed to consider Swift's defenses, and applied the wrong legal standard, we reverse and remand for further proceedings consistent with this opinion. *Cf. In re Estate of Eckley*, 780 N.W.2d 407, 414–15 (Minn.App.2010) (remanding to allow district court to address arguments and make appropriate findings in the first instance). In order to provide guidance for the district court on remand, we believe it is appropriate to comment on the defamation law surrounding Nexus's claim and Swift's defenses. *Cf. Floodwood–Fine Lakes Citizens Group v. Minnesota Envtl. Quality Council*, 287 N.W.2d 390, 392 (Minn.1979) ("[W]e feel it appropriate to comment on collateral issues which the trial court must resolve on the remand.").

■ To prevail on a claim of defamation, a plaintiff must prove that the defamatory statement (1) was communicated to someone other than the plaintiff, (2) was false, and (3) harmed the plaintiff's reputation. *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 919 (Minn.2009).

■ Although Swift asserted the defense of privilege in district court, the court declined to rule on malice in light of its decision to deny Swift's motion to dismiss. Privilege is a defense that must be raised by the defendant. *Bol v. Cole*, 561 N.W.2d 143, 147–48 (Minn.1997) (absolute privilege); *Jadwin*, 367 N.W.2d at 481 (qualified privilege). The burden of persuasion on whether the privilege applies is upon the party claiming the defense. *Jadwin*, 367 N.W.2d at 481. If Swift carried her burden of showing that a privilege did apply, Nexus would then bear the burden of proving malice. Common-law malice, which applies to qualified privilege cases,

requires only a showing of ill will or improper motive. *Moreno v. Crookston Times Printing Co.*, 610 N.W.2d 321, 328 (Minn.2000). In contrast, actual (or constitutional) malice requires a showing of a knowing or reckless disregard for the truth or falsity of a statement. *Id.* at 329. Actual malice is constitutionally required in cases against media defendants. *Bahr*, 766 N.W.2d at 922.

Swift cites *Moreno* in support of her assertion that the statements she made to the city council "are not actionable because of privilege." The *Moreno* court held that

the fair and accurate reporting privilege extends to protect the accurate and complete report or a fair abridgment of events that are part of the regular business of a city council meeting and that this privilege is not defeated by a showing of common law malice, but is defeated by a showing that the report is not a fair and accurate report of that proceeding.

610 N.W.2d at 334. That case dealt with a newspaper article reporting a follow-up investigation of a citizen's accusation at a city council meeting of wrongdoing by a police officer; the accusation was included in the article. *Id.* at 324. *Moreno* does not hold, as Swift seems to suggest, that any statement made at a city council meeting cannot form the basis of a defamation lawsuit.

In a footnote in her reply brief, Swift cites *Jadwin v. Minneapolis Star & Tribune Co.*, which held:

[C]orporate plaintiffs in defamation actions must prove actual malice by media defendants when the defendants establish that the defamatory material concerns matters of legitimate public interest in the geographic area in which the defamatory material is published, either because of the nature of the business conducted or because the public has an especially strong interest in the investigation or disclosure of the commercial information at issue.

367 N.W.2d 476, 487–88 (Minn.1985). Swift seems to contend that she is a media defendant within the meaning of *Jadwin* because her statements "were disseminated on a blog and a widely-viewed video, which are certainly mass media." She cites no authority for the proposition that this renders her a media defendant, and we are aware of none. Swift also contends that Nexus is deemed to be a public figure because it is a corporation. Under *Jadwin*, "corporations whose business activities are particularly clothed with the public interest" may be limited purpose public figures. *Id.* at 488. Limited purpose public figures "attain their position by thrusting themselves into the vortex of a public controversy to influence its outcome." *Id.* at 484. On remand, the district court must consider Swift's privilege defense, and if a privilege applies, whether Nexus can show the applicable malice.

 Of the three elements of defamation (publication, falsity, and harm), the only disputed element is whether Swift's statements were false. Truth is a complete defense to defamation. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn.1980). The defense of truth is not based on hypertechnical consideration of whether matters in the statement are true or false, but instead focuses on the underlying implication of the statement. *Phipps v. Clark Oil & Refining Corp.*, 408 N.W.2d 569, 573 (Minn.1987). Necessarily, a statement is only actionable under defamation law if it is capable of being proved true or false. *Marchant*, 694 N.W.2d at 95. Because the dichotomy between "opinion" and "fact" is artificial, courts consider

the statement's broad context, which includes the general tenor of the entire work and its statements, setting, and

format; the specific context of the statements, including the use of figurative or hyperbolic language and the reasonable expectations of the audience; and whether the statement is sufficiently objective to be susceptible of being proved true or false.

*Id.* at 96.

Swift argues that her statements are opinions incapable of being proved true or false, and alternatively, that to the extent they are capable of being proved true or false, her statements are true. She argues that her statements that a Nexus employee asphyxiated and killed the youth are at least substantially true, due to the coroner's report ruling his death a homicide. According to the allegations in Nexus's complaint, the employee in question followed industry- and state-approved procedure, homicide charges were never brought, child-endangerment charges were dismissed because the state's consulting expert did not think it was supported by the evidence, and no one other than Swift ever leveled the accusation of murder. We leave for the district court the initial determination of whether the evidence in the record, viewed in the light most favorable to Nexus, establishes by clear and convincing evidence that Swift's statement that a Nexus employee killed the youth in question is true. The district court may order discovery on this issue if the statutory requirements for ordering additional discovery are met.[4] *See* Minn.Stat. § 554.02, subd. 2(1).

Swift also contends that "a homicide merely means that a person died at the hands of another, whether criminally or not." Assuming the truth of this argument, Swift still must deal with the problem that she also accused Nexus of "getting away with murder." She seeks to separate the statements, arguing that "getting away with murder" was a hyperbolic or rhetorical statement of opinion that is incapable of being proved true or false. Swift contends that the phrase "was not uttered literally … to mean that Nexus killed anyone," citing the statement in her blog entry that it "means that someone is perpetrating bad behavior without any consequences." Her own blog entry might not support this conclusion for two reasons. First, the blog entry was a subsequent Internet posting that *repeated* the "getting away with murder" line. The initial occurrence was the YouTube video, which stated that the Nexus employee killed the youth and that his death was ruled a homicide. Shortly before concluding the video with a picture of the youth, the text showed "Nexus Treatment Centers getting away with MURDER." The question of whether Swift accused Nexus of murder must be considered in this context.

Second, her selective quotation from her blog post leaves out the notable preceding sentence: "When I say that Nexus is getting away with murder, I'm not *just* referring to the little boy that one of their employees killed." (Emphasis added.) The fair implication of the word "just" is that, by saying Nexus is getting away with murder, she is *also* stating that he was murdered by the Nexus employee. The district court may consider whether this blog post amounts to an accusation of murder in relation to Swift's defense that the "getting away with murder" statement was a rhetorical flourish or idiomatic expression incapable of being proved true or false. If the district court determines that Swift did accuse Nexus of murder, it must

---

4. We observe that the record on appeal at this time is not entirely clear on the affiliation between Nexus and the employee at the facility where the youth was killed.

then determine whether her statement was true and therefore not defamatory.[5]

### B. Public Participation

■ Swift argues that her activities constituted public participation within the meaning of the statute. Public participation is defined as "speech or lawful conduct that is genuinely aimed in whole or in part at procuring favorable government action." Minn.Stat. § 554.01, subd. 1(6). Nexus contends that Swift's statements were too attenuated from the public controversy to meet the statutory definition because the legislature may not have intended for the scope of the immunity to extend to speech on the Internet in the form of blog posts or YouTube videos. We reject this contention.

■ The interpretation of a statute is a question of law reviewed de novo. *Freeman v. Swift*, 776 N.W.2d 485, 489 (Minn.App.2009), *review denied* (Minn. Mar. 16, 2010). "If a statute, construed according to ordinary rules of grammar, is unambiguous, a court may engage in no further statutory construction and must apply its plain meaning." *Id.* This court has held that the anti-SLAPP statute's provision defining public participation is unambiguous. *Id.* Here, we find nothing in the text or implication of the statute to suggest that it demarcates Internet-based speech from other forms of speech. Internet speech is speech protected by the First Amendment. *PSINet, Inc. v. Chapman*, 362 F.3d 227 (4th Cir.2004). The Internet may be a powerful tool for influencing public opinion and policy. *See Vo v. City of Garden Grove*, 115 Cal.App.4th 425, 9

Cal.Rptr.3d 257, 282 (2004) (Sills, J., concurring and dissenting); *State v. Jennings*, 159 N.H. 1, 973 A.2d 340, 345 (2009). We therefore hold that the anti-SLAPP statute's public-participation requirement does not exclude speech communicated through the medium of the Internet.

To the extent the district court reserved its decision regarding a potential factual question of whether Swift's conduct was "genuinely aimed" at procuring favorable government action, we express no opinion on the determination of that issue. *See Freeman*, 776 N.W.2d at 490 ("[T]he determination of whether a communication is entitled to immunity under section 554.03 depends on the nature of the statement, the purpose of the statement, and the intended audience."). We observe, however, that the district court *must* preliminarily determine whether Nexus's defamation claim materially relates to acts of Swift amounting to public participation *before* it determines whether Nexus met its burden of showing by clear and convincing evidence that Swift's statements are not immune from liability. *See Stengrim*, 784 N.W.2d at 541.

### DECISION

In this defamation case, we hold that application of the anti-SLAPP statute does not violate Nexus's constitutional right to due process of law or its constitutional right to a jury trial. We therefore reverse the district court's constitutional rulings. Because the district court applied an incorrect legal standard to Swift's motion to dismiss, we reverse and remand for further proceedings. Consistent with the supreme court's recent decision in *Stengrim*,

---

5. We reiterate that this determination is not the same as the factual question for the jury, should this case proceed to trial. The question remains whether Nexus produced clear and convincing evidence of defamation when taking the facts alleged in the complaint as true and drawing all reasonable inferences in favor of Nexus, Minn. R. Civ. P. 12.03, or (if evidence outside the pleadings is considered or if further discovery is ordered) when viewing the evidence in the light most favorable to Nexus, Minn. R. Civ. P. 56.03.

784 N.W.2d 834 (Minn.2010), on remand the district court must make a preliminary determination of whether Nexus's defamation claim materially related to acts of Swift constituting public participation. If the district court concludes that Swift met her burden of making that threshold showing, it must then consider whether Nexus produced clear and convincing evidence of defamation in light of the standard for viewing evidence pursuant to a motion for judgment on the pleadings or for summary judgment. Specifically, the district court must consider Swift's defenses that her statements were privileged, that her statements were true, and that her statements were not capable of being proved true or false. The district court may order appropriate discovery pursuant to Minn.Stat. § 554.02, subd. 2(1), if the statutory requirements are met.

**Reversed and remanded.**