MIDDLE–SNAKE–TAMARAC RIVERS
WATERSHED DISTRICT,
Appellant,

v.

James STENGRIM, Respondent.

No. A08–825.

Supreme Court of Minnesota.

June 30, 2010.

Rehearing Denied Aug. 10, 2010.

Gerald W. Von Korff, Rinke–Noonan, St. Cloud, MN, for appellant.

Daniel A. Haws, Kelly S. Hadac, Murnane Brandt, St. Paul, MN, for respondent.

John P. Borger, Leita Walker, Faegre & Benson LLP, Minneapolis, MN; and Teresa Nelson, St. Paul, MN, for amicus curiae American Civil Liberties Union of Minnesota.

## OPINION

ANDERSON, G. BARRY, Justice.

The parties to the present litigation have a long history of conflict, both in district court and otherwise, culminating in the current action brought by Middle–Snake–Tamarac Rivers Watershed District against James Stengrim in Marshall County District Court. The Watershed District sought to enforce a settlement agreement arising out of earlier litigation in which Stengrim agreed to "address no further challenges" to a flood management project in the Red River Valley. Stengrim filed a motion to dismiss the present litigation pursuant to Minn. R. Civ. P. 56 and Minnesota's anti-SLAPP statutes, Minn. Stat. §§ 554.01–.05 (2008),[1] arguing that

---

1. Minnesota Statutes §§ 554.01–.05 (2008) contain Minnesota's anti-SLAPP provisions. "Anti–SLAPP" identifies the type of lawsuit that the statutes were enacted to thwart— Strategic Lawsuits Against Public Participation, or SLAPP suits. *Marchant Inv. &* *Mgmt. Co. v. St. Anthony W. Neighborhood Org.,* 694 N.W.2d 92, 94 (Minn.App.2005); *see also* Act of May 5, 1994, ch. 566, 1994 Minn. Laws 895, 895 (stating that the anti-SLAPP provisions were passed to "protect[ ] citizens

the Watershed District's lawsuit targeted protected acts of public participation that are immune from liability.

The district court denied Stengrim's motion to dismiss because the court concluded, as stated in its order, "that there are issues of material fact." But on interlocutory appeal, the court of appeals reversed, holding that the plain language of the anti-SLAPP statutes applies to the Watershed District's lawsuit. *Middle–Snake–Tamarac Rivers Watershed Dist. v. Stengrim,* No. A08–825, 2009 WL 367286, at *2–3 (Minn.App. Feb. 17, 2009). The court of appeals remanded for resolution of whether Minn.Stat. § 554.03 immunizes Stengrim's actions from liability. *Id.* at *4. We reverse and remand to the district court.

In response to many years of severe flooding in Minnesota's Red River Valley, the Legislature authorized the Agassiz Valley Water Management Project in 2000. *See* Act of May 15, 2000, ch. 492, art. 1, § 41, 2000 Minn. Laws 2187, 2249 (codified at Minn.Stat. § 103F.161, subd. 3 (2008)). The Watershed District sought to implement the project, which required acquisition of private land from Stengrim and other landowners. Stengrim was among a group of landowners that brought litigation against the Watershed District, raising various challenges regarding compensation for their land and other matters surrounding the project.

After extensive litigation, the matter was referred to the Board of Water and Soil Resources, which ordered mediation between the parties. As a result of mediation, the Watershed District entered into a settlement agreement with Stengrim and the other landowners effective as of April 21, 2006. The Watershed District agreed to pay $1.7 million for the landowners'

property. In return, the landowners agreed that "their challenges to the establishment of the Project are being dismissed with prejudice and that [they] will address no further challenges in litigation or otherwise against the establishment of the Project, which [the] Landowners now understand will be going forward." Both parties agreed to "endeavor to establish a positive and collaborative relationship between Landowners and the District." The settlement agreement also provided that the landowners had a continuing right to "meaningfully attend[ ] meetings" and "participate[ ] in Project team meetings regarding the Project and any modifications of the Project."

According to the Watershed District, Stengrim breached his agreement to "address no further challenges" to the project in several ways. The Watershed District filed a complaint in the district court of Marshall County, alleging that Stengrim

> has attempted to interfere with funding of the Agassiz Valley Project, has made statements with the intent of harming the project, has continued to file repeated data practice requests designed to burden the [Watershed District]'s staff and keep the staff from implementing their ordinary duties, has used the Data Practices Act as a weapon in an effort to stop the project and get his land back, has made complaints and engaged in other activities designed to delay or defeat implementation of the project, and has engaged in activities designed to make the conduct of the Plaintiff's business more acrimonious.

The Watershed District sought an "[o]rder disgorging [Stengrim] of such proceeds from his share of the $1,700,000.00 settlement sum."

and organizations from civil lawsuits for exercising their rights of public participation in government"). Motions under the statutes typically arise in the context of controversial

projects where litigation is instituted against citizens criticizing those projects. *See infra* at 6 n.3.

Stengrim filed a motion to dismiss the lawsuit "pursuant to Minn. R. Civ. P. 56 and Minn.Stat. § 554.02" (the anti-SLAPP motion), and the Watershed District filed a motion for partial summary judgment. Stengrim argued that the suit targets him for "public participation/speech" that "is immune from liability under Minn.Stat. § 554.03 and [that] is otherwise not prohibited by the settlement agreement." The district court denied Stengrim's anti-SLAPP motion because the court concluded "there are issues of material fact." In the memorandum accompanying the order, the district court stated the relevant facts of this dispute, referenced the requirements of Minn.Stat. §§ 554.01–.03, and concluded that

> the Court does not have enough facts to determine this issue and has found several issues of material facts in dispute contained in the parties' motions. Furthermore ... this is not the type of litigation the anti-SLAPP statute protects as the parties were not able to cite legal references concerning whether or not the legislature intended to apply the anti-SLAPP statute to suits to enforce settlement agreements and the Court does not find it is appropriate to be extended to such suits in this case.

The district court also denied the Watershed District's motion for partial summary judgment, finding genuine issues of mate-

rial fact regarding Stengrim's alleged breach of the settlement agreement.

Stengrim challenged the district court's ruling on his anti-SLAPP motion in an interlocutory appeal.[2] The court of appeals reversed, concluding that "the broad, plain language of the anti-SLAPP statute applies to Stengrim's motion." *Stengrim*, at *3. The court remanded the case to the district court for application of the anti-SLAPP statutes to the case. *Id.* at *4. This appeal followed.

## I.

■ We have not previously interpreted Minn.Stat. §§ 554.01–.05. We begin by reviewing SLAPP litigation, along with the background and text of Minnesota's anti-SLAPP provisions. In a typical SLAPP suit, those who oppose proposed real estate development plans find themselves facing a lawsuit—typically a tort claim such as slander or libel—brought against them with the goal of silencing dissent.[3] A SLAPP suit is a "Strategic Lawsuit[ ] Against Public Participation," initiated with the goal of stopping "citizens from exercising their political rights or to punish them for having done so." George W. Pring, *SLAPPs: Strategic Lawsuits Against Public Participation*, 7 Pace Envtl. L.Rev. 3, 4–6 (1989); *see also Duracraft Corp. v. Holmes Prods. Corp.*, 427 Mass. 156, 691 N.E.2d 935, 940 (1998) (stating that "[t]he objective ... is not to

2. *See Kastner v. Star Trails Ass'n*, 646 N.W.2d 235, 238–39 (Minn.2002) (providing immediate appellate review for "an order denying an immunity-based motion for summary judgment").

3. *See, e.g., In re Conditional Use Permit & Preliminary Planned Unit Dev. Applications of Living Word Bible Camp*, No. A06–1374, 2008 WL 2245708, at *1, *4 (Minn.App. June 3, 2008) (dismissing the county's malicious prosecution and abuse-of-process counterclaims against citizens pursuant to an anti-SLAPP motion, where the citizens challenged the

county's grant of permit applications of a bible-camp developer); *Marchant*, 694 N.W.2d at 97–98 (dismissing a developer's defamation claim against a neighborhood organization following the neighborhood organization's anti-SLAPP motion).

SLAPP suits generally come in the form of tort claims, such as defamation, interference with contract, abuse of process and malicious prosecution, among others. George W. Pring, *SLAPPs: Strategic Lawsuits Against Public Participation*, 7 Pace Envtl. L.Rev. 3, 9 & nn.11–13 (1989).

win [the SLAPP suit], but to use litigation to intimidate opponents' exercise of rights of petitioning and speech"). According to George Pring, who, along with Penelope Canan, conducted the first nationwide study of SLAPPs, *see* Pring, *supra,* at 6, SLAPPs have "worked ... to 'chill' present and future political involvement, both of the targets [of SLAPPs] and of others in the community, and have worked to assure that those citizens never again participate freely and confidently in the public issues and governance of their town, state, or country." George W. Pring & Penelope Canan, *"Strategic Lawsuits Against Public Participation" ("SLAPPS"): An Introduction for Bench, Bar and Bystanders,* 12 Bridgeport L.Rev. 937, 943 (1992). Minnesota's anti-SLAPP statutes were enacted in 1994 to "protect[ ] citizens and organizations from civil lawsuits for exercising their rights of public participation in government." *See* Act of May 5, 1994, ch. 566, 1994 Minn. Laws 895, 895.

Although the purpose of the anti-SLAPP statutes is clear, the language implementing that purpose is less so and the statutes set out a unique procedural framework. A party asserting an anti-SLAPP claim can raise an affirmative defense by bringing a motion under Minn.Stat. § 554.02, subd. 1, based "on the grounds that the claim materially relates to an act of the moving party that involves public participation," and invoke immunity under Minn.Stat.

§ 554.03 for acts constituting public participation. Once the anti-SLAPP statutes are properly invoked, the underlying claim survives a motion to dismiss only if the plaintiff (or party responding to the anti-SLAPP motion) meets a heavy "clear and convincing evidence" burden.[4] Minn.Stat. § 554.02, subd. 2(3). The statutes direct that "the court shall grant the motion and dismiss the judicial claim unless the court finds that the responding party has produced clear and convincing evidence that the acts of the moving party are not immunized from liability under section 554.03." Minn.Stat. § 554.02, subd. 2(3).

Minnesota Statutes § 554.03 provides immunity from liability for "[l]awful conduct or speech that is genuinely aimed in whole or in part at procuring favorable government action ... unless the conduct or speech constitutes a tort or a violation of a person's constitutional rights."[5] The proponent of the underlying claim may thus avoid dismissal by presenting clear and convincing evidence that the conduct of the moving party is not "[l]awful conduct or speech that is genuinely aimed in whole or part at procuring favorable government action" or that "the conduct or speech constitutes a tort or a violation of a person's constitutional rights." *Id.* This clear-and-convincing-evidence burden is not insurmountable for parties with meritorious claims.[6]

---

**4.** The anti-SLAPP statutes refer to the "moving party" and the "responding party." *See* Minn.Stat. §§ 554.01–.05. In most anti-SLAPP cases, including this dispute, the moving party seeking dismissal is the defendant and the responding party seeking to avoid dismissal is the plaintiff. Although those roles are reversed in the case of counterclaims, we will refer to the plaintiff and the defendant in their usual roles for the sake of clarity.

**5.** The provision in Minn.Stat. § 554.03 of what constitutes immune conduct is nearly identical to the definition of "public partic-

ipation" found in Minn.Stat. § 554.01, subd. 6 (" 'Public participation' means speech or lawful conduct that is genuinely aimed in whole or in part at procuring favorable government action."). The only difference between the two provisions is the placement of "lawful."

**6.** *See, e.g., Freeman v. Swift,* 776 N.W.2d 485, 492 (Minn.App.2009) (holding that plaintiffs "met their burden of proving by clear and convincing evidence that the challenged speech [was] not entitled to immunity under Minn.Stat. § 554.03"); *Am. Iron & Supply Co. v. Dubow Textiles, Inc.,* No. C1–98–2150, 1999

The anti-SLAPP statutes also contain some procedural quirks. Although the defendant in the action files the motion to dismiss, it is the plaintiff who bears the burdens of proof, production, and persuasion. *See* Minn.Stat. § 554.02, subds. 1, 2(2). In addition, Minn.Stat. § 554.02 mandates the suspension of discovery "pending the final disposition of the motion," subject to limited discovery at the discretion of the district court if there is a motion to continue discovery, and after a hearing and showing for good cause. Minn.Stat. § 554.02, subd. 2(1). Finally, the immunity provisions and procedural mechanisms of Minn.Stat. §§ 554.01–.045 must be interpreted consistent with Minn. Stat. § 554.05, which provides that nothing in the chapter "limits or precludes any rights the moving party or responding party may have under any other constitutional, statutory, case, or common law, or rule."

## II.

■■■ The first issue we must decide is whether Minnesota's anti-SLAPP statutes apply to a lawsuit for an alleged breach of a settlement agreement. The Watershed District argues that the anti-SLAPP statutes are not available to Stengrim in this case because "enforcement of a settlement agreement in good faith cannot be a SLAPP litigation."[7] The applicability of the anti-SLAPP statutes to Stengrim's motion is a legal question of statutory interpretation that we review de novo. *See City of W. St. Paul v. Krengel,* 768 N.W.2d 352, 356 (Minn.2009). Statutory interpretation begins with the plain language of the statute. *Jackson v. Mortgage Elec. Registration Sys., Inc.,* 770 N.W.2d 487, 496 (Minn.2009). "If the words of the statute are 'clear and free from all ambiguity,' further construction is neither necessary nor permitted." *Owens v. Water Gremlin Co.,* 605 N.W.2d 733, 736 (Minn. 2000) (quoting Minn.Stat. § 645.16 (2008)).

The anti-SLAPP statutes "appl[y] to any motion in a judicial proceeding to dispose of a judicial claim on the grounds that the claim materially relates to an act of the moving party that involves public participation." Minn.Stat. § 554.02, subd. 1. A "judicial claim" or "claim" is defined as including "any civil lawsuit, cause of action, claim, cross-claim, counterclaim, or other judicial pleading or filing seeking damages for an alleged injury." Minn.Stat. § 554.01, subd. 3. A " '[m]otion' includes any motion to dismiss, motion for summary judgment, or any other judicial pleading filed to dispose of a judicial claim." Minn.Stat. § 554.01, subd. 4.

Minnesota Statutes § 554.02, subdivision 1, does not contain an express categorical exception for a breach of contract claim for damages involving a settlement agree-

WL 326210, at *3–5 (Minn.App. May 25, 1999) (denying anti-SLAPP motion in a defamation case because the plaintiff presented clear and convincing evidence that the defendant, in the course of opposing the plaintiff's development project, falsely represented the criminal records of the plaintiff company's owners).

7. The Watershed District also argues that the principles found in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and *United Mine Workers of America v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), comprising what is known as the *Noerr–Pennington* doctrine, protect its right to access the courts and thus preclude application of the anti-SLAPP statutes. Those cases held that because the right to petition the government is constitutionally protected, genuine efforts to influence government decision-making are not subject to antitrust attacks. *Noerr,* 365 U.S. at 138, 81 S.Ct. 523; *Pennington,* 381 U.S. at 669–70, 85 S.Ct. 1585. We agree with the court of appeals' conclusion that the *Noerr–Pennington* doctrine does not broadly protect plaintiffs from application of the anti-SLAPP statutes. *Stengrim,* 2009 WL 367286, at *3 n. 2.

ment. Instead, Minn.Stat. § 554.02, subd. 1, provides that "[t]his section applies to any motion in a judicial proceeding to dispose of a judicial claim." As noted above, "motion" encompasses "any motion to dismiss," such as Stengrim's motion to dismiss, and "judicial claim" includes "any civil lawsuit [or] cause of action" that seeks damages, like the Watershed District's claim for damages here. *See* Minn.Stat. § 554.01, subds. 3–4. The word "any" in the definition of "judicial claim," taken by itself, certainly cannot be construed as excepting a contractual claim for damages based on an alleged breach of a settlement agreement. But that conclusion does not end our analysis. There is a limitation to the applicability of the anti-SLAPP provisions: Minn.Stat. § 554.02, subd. 1, requires "that the claim materially relate[ ] to an act of the moving party that involves public participation." Without this restriction, all claims would be subject to the irregular procedural process outlined by Minn.Stat. §§ 554.01–.05.

## III.

■ The anti-SLAPP procedural process begins with the filing of "any motion in a judicial proceeding to dispose of a judicial claim on the grounds that the claim materially relates to an act of the moving party that involves public participation." Minn.Stat. § 554.02, subd. 1. Accordingly, the statute permits a party, such as Stengrim, to assert immunity under the anti-SLAPP statutes by filing a motion to dismiss a breach of contract lawsuit. But the mere filing by a defendant or moving party of a motion under the anti-SLAPP statutes does not automatically place the burden of persuasion on the plaintiff or non-moving party to prove by clear and convincing evidence that the defendant is not immune from liability under Minn.Stat. § 554.03. The plain language of Minn.Stat. § 554.02, subd. 1, states that the motion to dispose

of a judicial claim must be based "on the grounds that the claim materially relates to an act of the moving party that involves public participation."

Therefore, a district court must make a preliminary determination about whether the underlying "claim materially relates to an act of the moving party that involves public participation," Minn.Stat. § 554.02, subd. 1, that is, "speech or lawful conduct that is genuinely aimed in whole or in part at procuring favorable government action." Minn.Stat. § 554.01, subd. 6. In other words, applicability of the anti-SLAPP provisions is a threshold question that the district court must first analyze before Minn.Stat. § 554.02, subd. 2, comes into play. Discerning between a SLAPP action and a legitimate lawsuit may present challenges, but it is necessary because such discernment is the entire purpose of the anti-SLAPP statutes.

■ Minnesota Statutes § 554.02, subdivisions 1–2, therefore require an initial inquiry by the district court. The burden is first on the defendant or moving party to make a threshold showing that the underlying "claim materially relates to an act of the moving party that involves public participation." *See* Minn.Stat. § 554.02, subd. 1. Once this minimal burden is satisfied, then the plaintiff or responding party must show by clear and convincing evidence that the acts at issue are not immune under Minn.Stat. § 554.03. Clearly, these burdens are not the same, but it is insufficient for a defendant to simply assert that public participation is involved. Stated another way, the defendant, or moving party, must make a threshold showing that the acts that are "materially" related to the responding party's claim are themselves public participation, i.e., "speech or lawful conduct that is genuinely aimed in whole or in part at procuring favorable government action." *See* Minn. Stat. § 554.01, subd. 6.

The situation here is peculiar with respect to this first step of the inquiry. Indeed, this case is not the classic SLAPP situation, which typically involves tort claims. *See* Pring, *supra,* at 6 n. 3. Here, there was a settlement agreement in 2006 between the Watershed District and the landowners, one of whom was Stengrim. By signing the agreement, Stengrim agreed that his "challenges to the establishment of the Project [were] dismissed with prejudice and that [he] will address no further challenges in litigation or otherwise against the establishment of the Project, which [Stengrim] now understand[s] will be going forward." The Watershed District and Stengrim agreed to "endeavor to establish a positive and collaborative relationship between Landowners and the District," though landowners could "meaningfully attend[ ] meetings [and] participate[ ] in Project team meetings regarding the Project and any modifications of the Project."

Preexisting legal relationships, such as those based on a settlement agreement where a party waives certain rights, may legitimately limit a party's public participation. It would be illogical to read Minn.Stat. §§ 554.01–.05 as providing presumptive immunity to actions that a moving party may have contractually agreed to forgo or limit.[8] *See* Minn.Stat.

§ 645.17 (2008) (stating that in ascertaining the intention of the Legislature, we may presume that "the legislature does not intend a result that is absurd"). The underlying dispute here is essentially a contractual argument, and the district court had the authority to deny Stengrim's anti-SLAPP motion because the court determined it was at best premature. In a situation such as the one present here, a district court has the authority to deny a defendant's anti-SLAPP motion where a defendant has entered into a settlement agreement and contractually agreed not to hinder the establishment of a project, thereby waiving certain rights to public participation, but retaining others, and the court determines that there are genuine issues of material fact about the settlement agreement's effect on the defendant's public participation rights.

Because the district court determined that it did not have enough facts and that there were genuine issues of material fact concerning the effect of the settlement agreement on Stengrim's actions, we conclude that the district court properly denied Stengrim's motion to dismiss under the anti-SLAPP statute.[9]

Reversed and remanded.

---

8. The parties here likely foresaw that litigation subsequent to the settlement agreement might arise, and included a provision in the agreement that said "[i]n the event any party breaches this Agreement, any other party may commence an action to enforce the agreement as provided by law."

9. It is, of course, axiomatic that the effect of anti-SLAPP statutes, benefiting the public expression of dissent, limits the remedies of parties who may have otherwise actionable claims about the content of that dissent and there may be constitutional implications to anti-SLAPP statutes. Although the Watershed

District does not directly raise a constitutional challenge to the anti-SLAPP statutes, the statutes in general may raise constitutional concerns because the statutes, to some degree, protect a defendant's exercise of the right of petition, and in so doing, potentially affect a plaintiff's right of petition. *See Duracraft Corp. v. Holmes Prods. Corp.,* 427 Mass. 156, 691 N.E.2d 935, 942–43 (1998) (expressing concern about the constitutionality of Massachusetts' anti-SLAPP statute if the statute was interpreted too broadly); *Opinion of the Justices (SLAPP Suit Procedure),* 138 N.H. 445, 641 A.2d 1012, 1015 (1994) (stating that "[a] solution [to SLAPP suits] cannot strengthen

the constitutional rights of one group of citi-
zens by infringing upon the rights of another
group'').