*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0404**

Dennis Lougee, et al.,
Appellants,

vs.

Craig Eugene Pehrson,
Respondent.

**Filed September 12, 2016
Affirmed
Stauber, Judge**

Itasca County District Court
File No. 31CV141034

Jerome D. Feriancek, Jr., Ryan Stutzman, Thibodeau, Johnson & Feriancek, P.L.L.P., Duluth, Minnesota (for appellants)

Cheryl Hood Langel, Daniel J. Singel, McCollum, Crowley, Moschet, Miller & Laak, Ltd., Minneapolis, Minnesota (for respondent)

Considered and decided by Stauber, Presiding Judge; Reyes, Judge; and Jesson, Judge.

## UNPUBLISHED OPINION

**STAUBER**, Judge

Appellant, personally and on behalf of his business, challenges the district court's dismissal of his tort actions under the anti-SLAPP statute, which protects lawful speech from liability when the speech constitutes "public participation" and when the opponent

of the statute's application cannot provide clear and convincing evidence that the speech constitutes a tort.   Because the district court did not err in applying the statute, we affirm.

**FACTS**

In February 2012, respondent Craig E. Pehrson reported to the Grand Rapids police allegations of insurance fraud and other business irregularities involving appellant Dennis Lougee and his business, appellant Proficient Cleaners Inc. d/b/a Servicemaster of Grand Rapids (Proficient Cleaners).  Proficient Cleaners provided a variety of cleaning services for homes and businesses damaged by catastrophic events and was sometimes retained directly by insurers.  Pehrson owned a dry-cleaning business, Vanity Cleaners, Inc., that was occasionally given work by Proficient Cleaners, for which Proficient Cleaners received a ten percent commission.  Lougee also owned another business, Creative Concepts, that was housed in the same building as Proficient Cleaners and performed construction work on properties that were serviced by Proficient Cleaners. According to Pehrson, his "main motivation" in approaching the police was to "come clean" because he had heard rumors that one of Lougee's clients, an insurer, had received a letter informing the insurer about Lougee's fraudulent activities and was conducting an investigation.  Also according to Pehrson, Lougee had heard about the rumor and "was starting to accuse anybody and everybody in his path."

In response to Pehrson's allegations, Investigator Andy Morgan conducted an investigation that included checking records, speaking to Lougee and some of his former employees and clients, and executing search warrants at Lougee's businesses.  The results of Morgan's investigation were inconclusive, and by letter dated July 30, 2014, the Itasca

2

County Attorney's office notified Morgan that it would not press charges because there was "[i]nsufficient evidence to prove intent to defraud insurance company."

According to Pehrson, Lougee asked him to inflate business invoices beginning in 2008, and Pehrson did so until Pehrson began working for a national franchise, Certified Restoration Dry Cleaning Network (CRDC), in 2010, and the practice was no longer feasible. Pehrson also alleged several other instances of Lougee's improper conduct, including that (1) Lougee told Pehrson how to overtighten nuts on toilets so that they would break and cause damage to homes, for which Lougee's cleanup services would be needed; (2) in one instance, Lougee falsely led an insurer to declare a damaged boat a total loss, and he then arranged for his son to buy the boat; (3) Lougee made false claims on his own insurance; and (4) Lougee had a practice of making false claims of damage to homes, and the claims were supported by broken pipe fittings that came from a collection of damaged pipes in his office. Through his investigation, Morgan could not satisfactorily verify these claims through business documents, and at his deposition he stated that some of the investigation witnesses drew conclusions from rumors and events that they did not personally witness.

After the investigation resulted in no criminal charges being filed, Lougee and Proficient Cleaners initiated an 11-count tort action against Pehrson alleging nine counts of defamation and one count each of business disparagement and deceptive trade practices. The complaint alleges that Pehrson made four false representations of fact concerning Lougee's business practices, including allegations of: (1) bill inflation; (2) Pehrson's writing Lougee a check to reduce the "in-store balance" created by the bill

3

inflation; (3) instructions on how to stage insurance fraud, including damage to toilets; and (4) the use of damaged water-pipe fittings to commit insurance fraud.

After the parties conducted discovery that included depositions of key witnesses and former employees, Pehrson moved for summary judgment, arguing that his actions were immune from suit under Minn. Stat. §§ 554.01-.05 (2014), known as the anti-SLAPP statutes.[1]  After a hearing, the district court entered a judgment of dismissal, ruling that because Pehrson's statements to the Grand Rapids police were "aimed at procuring favorable government action," Pehrson satisfied "a threshold showing that the underlying claim materially relate[d] to an act of his involving public participation," Lougee did not satisfy the requirement of offering "clear and convincing evidence [that] Pehrson's statements were defamatory and therefore not entitled to immunity from liability," and "[t]he evidence [did] not support a finding that Pehrson knew, or in the exercise of reasonable care should have known, that the alleged defamatory statements were false."  Lougee and Proficient Cleaners appeal.

**D E C I S I O N**

Although Pehrson moved for summary judgment, the judgment issued by the district court dismissed the tort action without applying the traditional summary-judgment standard.  A party who seeks to invoke immunity from suit under the anti-

---

[1] "A SLAPP suit is a Strategic Lawsuit Against Public Participation, initiated with the goal of stopping citizens from exercising their political rights or to punish them for having done so." *Middle-Snake-Tamarac Rivers, Watershed Dist. v. Stengrim*, 784 N.W.2d 834, 838 (Minn. 2010) (quotations omitted).  Typically, a SLAPP suit includes tort claims such as slander or libel that are directed at the public participant. *Id.*  The anti-SLAPP statute is designed to protect public participation in government. *Id.* at 839.

4

SLAPP statute may do so by "motion to dismiss, motion for summary judgment, or any other judicial pleading filed to dispose of a judicial claim." Minn. Stat. § 554.01, subd. 4. Under the anti-SLAPP statute, the court is *required* to dismiss the underlying claim, even in the face of genuine issues of material fact, if the plaintiff has failed to carry its burden of persuasion that the defendant who claims immunity from suit under the anti-SLAPP statute is not immune by clear and convincing evidence. *Leiendecker v. Asian Women United of Minn.*, 848 N.W. 2d 224, 231 (Minn. 2014), *as modified by* 855 N.W.2d 233, 234 (Minn. 2014) (modifying slip opinion to remand the case to the court of appeals, rather than to the district court, for further proceedings);[2] *see* Minn. Stat. § 554.02, subd. 2(3) (requiring dismissal of suit unless responding party produces clear and convincing evidence to demonstrate that statute should not apply). The supreme court noted in *Leiendecker* that because under the summary-judgment standard "genuine issues of material fact preclude summary judgment," the "two standards, which operate differently when genuine issues of material fact exist, are incompatible with one another." *Id*. (emphasis in original). Thus, the district court properly dismissed the action without applying a traditional summary-judgment analysis and instead relied on the statutory framework. This court applies the de novo standard of review to a statute's application to undisputed facts. *Stengrim*, 784 N.W.2d at 840.

---

[2] Following the supreme court's remand to this court, this court remanded to the district court, and the district court issued a decision finding the anti-SLAPP statute unconstitutional because it violates jury-trial rights. A challenge to the constitutionality of the statute and whether that challenge was waived by the claimant's failure to raise the constitutional challenge in prior proceedings are issues currently before the supreme court on petitions for accelerated review.

The anti-SLAPP statute protects lawful speech from public liability when the speech constitutes "public participation" and when the opponent of the statute's application cannot meet the burden to provide clear and convincing evidence that the speech constitutes a tort. Minn. Stat. §§ 554.02, subd. 2(3); .04, subd. 2. "Typically, anti-SLAPP statutes protect the exercise of two types of public-participation rights: the right to free speech and the right to petition the government." *Leiendecker*, 848 N.W.2d at 228.

A "unique burden-shifting framework" applies to the parties in an anti-SLAPP case. *Id.* at 229. A defendant who has been sued may move for dismissal of a claim in reliance on the statute's immunity provisions by making "a threshold showing that the underlying claim materially relates to an act of the [defendant] that involves public participation." *Id.* (quotation omitted). The plaintiff in the underlying action next bears the burden of production, and the district court must grant the motion to dismiss unless it "'finds that the [plaintiff] has produced clear and convincing evidence that the acts of the [defendant] are not immunized from liability under section 554.03.'" *Id.* at 230 (emphasis omitted) (quoting Minn. Stat. § 554.02, subd. 2(3)). "[T]he [district] court is *required* to dismiss the claim, even in the face of genuine issues of material fact, if the [plaintiff] has failed to carry its burden of persuasion that the [defendant] is not immune by clear and convincing evidence." *Id.* at 231. The plaintiff can meet this requirement by "establishing that the [defendant's] conduct or speech was not aimed in whole or in part at procuring favorable government action, that the conduct or speech constituted a tort, or that the conduct or speech violated another's constitutional rights." *Id*. at 229

6

(citing Minn. Stat. § 554.03). Thus, in responding to a motion for dismissal under the anti-SLAPP statute, "the [plaintiff] carries three distinct burdens[:] . . . the burden of proof, the burden of production, and the burden of persuasion." *Id*. at 231 (citing Minn. Stat. § 544.02, subd. 2(2)).

The first question in evaluating Pehrson's anti-SLAPP motion is whether Pehrson engaged in "public participation" when he contacted the Grand Rapids police. *See Leiendecker*, 848 N.W.2d at 229 (stating that the defendant in the underlying suit must make a "threshold showing that the underlying claim materially relates to an act of the moving party that involves public participation" (quotations omitted)). The anti-SLAPP statute provides immunity to a defendant whose speech or conduct "is genuinely aimed in whole or in part at procuring favorable government action." Minn. Stat. § 554.03; *see* Minn. Stat. § 554.02, subd. 1 (stating that statute "applies to any motion . . . to dispose of a judicial claim on the grounds that the claim materially relates to an act of the moving party that involves public participation").

Lougee argues that Pehrson has not satisfied the threshold showing of public participation because Pehrson's action in contacting the police was not "genuinely aimed at procuring favorable government action." Rather, Lougee argues, Pehrson's brother, Gene Pehrson, owned a restoration business that was a direct competitor of Lougee's and that Pehrson stood to gain economically by elimination of Lougee's business. We disagree. Even if the record includes facts that would support a finding that Pehrson was partly motivated by self-interest in approaching the police, his actions nevertheless can only be construed as an effort to obtain favorable government action. *See Nygard v.*

*Walsh*, No. A14-0011, 2014 WL 7236977, at *2 (Minn. App. Dec. 22, 2014) (stating, with regard to a neighbor's complaint to police about another neighbor's conduct, "The letter [to police] can only be read as an attempt to procure favorable government action."). Pehrson contacted police and participated in an interview in which he outlined Lougee's alleged fraudulent business practices and implicated himself in some of those practices. Pehrson's request that the police take action against Lougee and his business was "genuinely aimed at procuring favorable government action."

The second step in evaluating Pehrson's anti-SLAPP motion is whether Lougee "produced clear and convincing evidence that the moving party is not entitled to immunity." *Leiendecker*, 848 N.W.2d at 229. Lougee could do this by showing that Pehrson's statements to police were defamatory.[3] "To establish a defamation claim, a plaintiff must prove three elements: (1) the defamatory statement is communicated to someone other than the plaintiff; (2) the statement is false; and (3) the statement tends to harm the plaintiff's reputation and to lower the plaintiff in the estimation of the community." *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 919-20 (Minn. 2009) (quotation omitted). To establish defamation per se, a person must falsely accuse another of committing a crime. *Anderson v. Kammeier*, 262 N.W.2d 366, 371 (Minn. 1977). Assuming Pehrson satisfied the first and third elements of a defamation claim because the statements were communicated to third parties and lowered Lougee's reputation in the business community (his business closed), and assuming that Pehrson accused Lougee of

---

[3] Because Lougee's appellate brief discusses only his defamation claims, we limit our analysis to those claims.

committing a crime, the key question with regard to both defamation torts is whether Pehrson's statements were false. *See American Book/Co. v. Kingdom Pub. Co.*, 71 Minn. 363, 366, 73 N.W. 1089, 1090 (1898) (stating that a defamation plaintiff must plead "specific alleged defamatory words").

In a well-reasoned order, the district court found that Lougee failed to show by clear and convincing evidence that Pehrson's statements were false, limiting its examination to the four specific instances of alleged conduct described in Lougee's complaint.

In the first instance, Pehrson alleged that Lougee requested that invoices be increased to amounts greater than actual fees to create an "in-store balance" to be used later by Lougee or his business. Lougee and Pehrson disagree about whether this occurred, and evidence from other witnesses as well as documentary evidence could have supported inferences and an ultimate finding that the statement was either true or false. As such, Lougee did not meet the clear-and-convincing standard to establish the falsity of this claim.

In the second instance, Lougee claimed that Pehrson falsely told police that he wrote Lougee a check to reduce the in-store balance. At his deposition, Lougee contradicted his own allegation, answering "Yes" to the question of whether Pehrson "wrote plaintiffs a check to reduce the growing in-store balance." Lougee also elaborated, saying, "Well, yeah, once in a while he would – he would give me a check when the balance got too high but not off of – Number one – because there is always an

in-store balance." By conceding this, Lougee failed to provide clear and convincing evidence that Pehrson's statement about writing a check for this purpose was false.

In the third instance, Lougee claimed that Pehrson lied about conversing with him about how to stage insurance losses by damaging toilets in homes. Again, the principals provided contradictory statements about whether this conversation occurred, but, as noted by the district court, the deposition testimony of three former employees supported that "similar unethical or illegal conduct by Lougee or at Lougee's direction" occurred. The record as a whole does not include clear and convincing evidence to establish the falsity of Pehrson's claim that Lougee staged insurance losses.

In the fourth instance, Lougee claimed that Pehrson falsely told Investigator Morgan that Lougee used damaged pipe fittings to support false insurance-coverage claims and that he kept a drawer of defective pipe fittings for this purpose. The district court stated that this allegation was "independently corroborated by two other witnesses," both former employees. On this record, the district court properly concluded that Lougee failed to meet the burden to establish clear and convincing evidence of the falsity of this claim.

In summary, the district court made the following statement of its analysis:

> Although some of the arguments made by Lougee raise questions about the truthfulness of Pehrson's statements, Lougee has not presented clear and convincing evidence that any of Pehrson's statements were defamatory. In light of the protection afforded the reporting of suspected unlawful conduct to law enforcement, the complaint must be dismissed.

10

We observe no error in the district court's application of the anti-SLAPP statute. We therefore affirm.

**Affirmed.**