# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A16-0241

Mobile Diagnostic Imaging, Inc.,
Appellant,

vs.

Racheal L. Hooten f/k/a Racheal L. Jones, et al.,
Respondents.

**Filed December 19, 2016**
**Affirmed in part, reversed in part, and remanded**
**Stauber, Judge**

Hennepin County District Court
File No. 27-CV-14-7349

William R. Skolnick, Andrew H. Bardwell, Skolnick & Joyce, P.A., Minneapolis, Minnesota (for appellant)

Randall Tigue, Randall Tigue Law Office, P.A., Fridley, Minnesota (for respondents)

Considered and decided by Jesson, Presiding Judge; Stauber, Judge; and Reyes, Judge.

## S Y L L A B U S

1. The procedural requirements of Minnesota's anti-SLAPP statute, Minn. Stat. § 554.02 (2014), violate the non-moving party's constitutional right to a jury trial by requiring a court to make a pretrial factual determination that the non-moving party has produced clear and convincing evidence to support his claim.

2. Minn. Stat. § 148.103, subd. 1 (2014), provides immunity for the act of reporting a licensee's or a potential licensee's misconduct to the Minnesota Board of

Chiropractic Examiners, but this immunity does not apply to the act of disclosing this same information to others.

3. A person pursuing a private attorney-general claim under Minn. Stat. §§ 325F.69, subd. 1; 8.31, subds. 1, 3a (2014), must demonstrate that the cause of action benefits the public.

**O P I N I O N**

**STAUBER**, Judge

Appellant challenges the district court's order dismissing its claims as barred by the anti-SLAPP statute, Minn. Stat. §§ 554.01-.05 (2014), and Minn. Stat. § 148.103, subd. 1, which provides immunity to persons filing complaints with the Minnesota Board of Chiropractic Examiners. By notice of related appeal, respondent challenges the dismissal of its claim under the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69 (2014). We affirm in part, reverse in part, and remand to the district court for further proceedings.

**FACTS**

Appellant Mobile Diagnostic Imaging, Inc. (MDI) provided mobile magnetic-resonance-imaging (MRI) services to chiropractors until October 2013. MDI is wholly owned by Michael Appleman, who is not a licensed chiropractor. Respondent Stand-Up MidAmerica MRI, P.A. (SUMA) also provides MRI services. It is owned by respondent Wayne Dahl, a licensed chiropractor. MDI and SUMA competed for patient referrals from chiropractors. Respondent Rachael Hooten was formerly employed by MDI as a clinic manager, but was later hired by SUMA for the same position.

2

MDI entered into contracts with chiropractors to provide MRI services at or near individual offices. MDI used "lease agreements," which ostensibly paid a chiropractor for use of space in a parking lot, office supplies, telephone services, internet connections, and employee services. MDI employed technicians to operate the MRI machines and contracted with radiologists to review and interpret the MRI scans.

Dahl had been opposed to MDI's business practices since 2003. Appleman had approached Dahl in 2003 and offered to pay him $200 for every patient Dahl referred for an MRI. Dahl rejected this offer as unethical. Dahl opened SUMA the next year and when chiropractors continued to use MDI, Dahl concluded that they were receiving "kickbacks" from MDI. Dahl posted a copy of a sample MDI lease agreement on his website, and described it as illegal. In 2008, Dahl complained to the Minnesota Attorney General's Office about MDI, but the attorney general did not initiate charges. In 2010, Dahl spoke to several chiropractors, seeking to discourage them from using MDI's services.

In 2011, Hooten entered into a one-year employment contract with MDI; the contract included confidentiality and non-compete provisions. In November 2011, Hooten resigned from the position, stating that she had accepted another job. Hooten did not disclose that her new job was with SUMA. When Hooten left MDI, she took her personnel file, including all the original documents, and copies of MDI's lease agreements, customer lists, contact lists, policies, and procedural manuals. Hooten also may have taken copies of information and research about MDI's competitors, including SUMA.

3

Hooten told Dahl that she wanted to leave MDI because she thought it was "an unethical and possibly illegal operation." Hooten provided Dahl with copies of the materials she had taken from MDI's files. Dahl believed that these documents confirmed his suspicion that MDI was paying kickbacks for referrals, and he filed a series of anonymous ethics complaints with the Minnesota Board of Chiropractic Examiners, alleging that 11 chiropractors were acting unethically by contracting with MDI. At a deposition taken in conjunction with a subsequent administrative disciplinary action, Dahl admitted that Hooten had removed the confidential materials from MDI's files and provided them to him. Dahl also stated that he gave the confidential information to Illinois Farmers Insurance Company, Allstate Mutual Automobile Insurance Company, and the Stempel & Doty law firm, which represents insurance companies.

As a result of the information provided by Dahl, the chiropractic board entered into corrective actions with four of the 11 chiropractors reported. The Stempel law firm, on behalf of Illinois Farmers and other insurers, initiated an action in federal court against MDI and 46 chiropractors, alleging that MDI paid the chiropractors kickbacks for unnecessary MRIs. All of these claims were dismissed under Fed. R. Civ. P. 12(b)(6) (failure to state a claim upon which relief can be granted) by the federal district court in 2014; the federal district court concluded that both the federal claims and various state claims were without basis. *Illinois Farmers Ins. Co. v. Mobile Diagnostic Imaging, Inc.*, No. 13-CV-2820 (D. Minn. Aug. 19, 2014).

In April 2014, MDI sued respondents, alleging misappropriation of trade secrets, tortious interference with contract, unfair competition, unjust enrichment, conversion,

4

civil theft, breach of contract and breach of duties as to Hooten, and civil conspiracy. Respondents filed an answer and a counterclaim alleging violation of the Minnesota Consumer Fraud Statute, corporate practice of medicine, and immunity from suit under Minn. Stat. § 554.03. MDI moved for dismissal under Minn. R. Civ. P. 12.02(e) and 9.02. Respondents moved for dismissal under the anti-SLAPP statute and Minn. Stat. § 148.103, subd. 1.

Quoting *Leiendecker v. Asian Women United of Minnesota*, 848 N.W.2d 224, 231 (Minn. 2014), the district court stated that it was required to dismiss a claim under the anti-SLAPP statute, "'even in the face of genuine issues material fact, if the responding party has failed to carry its burden of persuasion that the moving party is not immune by clear and convincing evidence.'" The district court determined that respondents were entitled to immunity under sections 554.03 and 148.103, subdivision 1, and dismissed MDI's claims to the extent that they implicated Dahl's reports to the chiropractic board or the federal litigation brought by the insurance companies. The district court dismissed with prejudice the interference-with-contractual-relationships, unfair-competition, and civil-conspiracy claims. The district court did not dismiss the claims for violation of the Minnesota Trade Secret Act, unjust enrichment, conversion, civil theft, breach of contract, and breach of duties to "the extent [MDI] can establish facts distinct from the immune conduct and damages," but dismissed any part of those claims that touched on immune conduct. The district court dismissed respondent SUMA's counterclaims, reasoning that it had not demonstrated a public benefit and MDI was not engaged in the corporate practice of medicine.

5

MDI requested reconsideration, arguing that the district court had not addressed its argument that the anti-SLAPP statute was unconstitutional, but the district court made no apparent response. The parties then entered into a stipulation in which they agreed that MDI's complaint and the respondents' counterclaims would be dismissed with prejudice in order to facilitate an appeal. MDI filed a notice of appeal and of a constitutional challenge on February 11, 2016, and respondents filed a notice of related appeal as to their consumer-fraud counter claim on February 25, 2016.

## ISSUES

I. Does Minn. Stat. § 554.02 violate the non-moving party's constitutional right to a jury trial by requiring the district court to find facts before trial to determine whether the moving party is entitled to immunity?

II. Is a person reporting alleged misconduct under Minn. Stat. §§ 148.102, subd. 2 (2014); .103, subd. 1, entitled to unlimited immunity?

III. Must a person pursuing a private attorney-general claim under Minn. Stat. § 325F.69 demonstrate a public benefit?

## ANALYSIS

## I.

MDI argues that the Minnesota anti-SLAPP statutory procedure deprives a responding party of the constitutional right to a jury trial. The Minnesota Constitution states, "The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy." Minn. Const. art. I, § 4; *see* U.S. Const. amend. VII ("[T]he right of trial by jury shall be preserved, and no fact tried by a

6

jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."). "A party is . . . constitutionally entitled to a trial by jury if a party raising that same theory for relief at the time the Minnesota Constitution was adopted also would have been entitled to a jury trial." *Schmitz v. U.S. Steel Corp.*, 852 N.W.2d 669, 673 (Minn. 2014). "The jury-trial right does not protect the *existence* of any particular common-law cause of action, but it does ensure that in a common-law suit tried by a jury, a judge's determination will not prevent the jury from resolving genuine issues of material fact." *Nexus v. Swift*, 785 N.W.2d 771, 780 (Minn. App. 2010) (citation omitted), *abrogated on other grounds by Leiendecker*, 848 N.W.2d at 230-32.

The legislature enacted the anti-SLAPP statute "to protect citizens and organizations from civil lawsuits for exercising their rights of public participation in government." *Middle-Snake-Tamarac Rivers Watershed Dist. v. Stengrim*, 784 N.W.2d 834, 839 (Minn. 2010) (quotation omitted). A party to a lawsuit may raise an affirmative defense under the statute by asserting that a claim "materially relates to an act of the moving party that involves public participation" and asking for immunity for acts that constitute public participation. *Id.* (quotation omitted). Under the statute, the party opposing the anti-SLAPP motion must produce clear and convincing evidence that the lawsuit is not intended to affect public participation. *Id.*

Previously, this court analyzed anti-SLAPP motions by applying the standards for a judgment on the pleadings. *See Marchant Inv. & Mgmt. Co. v. St. Anthony W. Neighborhood Org., Inc.*, 694 N.W.2d 92, 95 (Minn. App. 2005) (applying a judgment-on-the-pleadings standard), *abrogated by Leiendecker*, 848 N.W.2d at 230-232; *see also*

7

*Nexus*, 785 N.W.2d at 781-82 (applying summary-judgment standard). *See also*

*Leiendecker v. Asian Women United of Minnesota*, 834 N.W.2d 741, 749-50 (Minn. App.

2013) (applying judgment-on-the-pleadings standard), *reversed*, 848 N.W.2d 224 (Minn.

2014). But in *Leiendecker*, the supreme court abrogated the *Marchant* and *Nexus*

decisions based on their use of these standards. 848 N.W.2d at 231-32. Instead, the

supreme court concluded that, under the unambiguous language of the statute, the party

opposing an anti-SLAPP motion has the burdens of proof, production, and persuasion,

and must produce evidence in order to defeat the motion. *Id.* at 231. Furthermore, a

court *must* dismiss an action if the opposing party fails to carry its burden of persuasion,

even if there are genuine issues of material fact outstanding. *Id.* This requires the district

court to weigh evidence and decide facts in order to determine whether a party has

provided clear, convincing, and persuasive evidence to oppose the anti-SLAPP motion.

*Id.* at 232-33.

The supreme court noted the issue of whether a party is deprived of a

constitutional right to a jury trial when a pre-trial determination that requires weighing of

evidence and factfinding must be made under the anti-SLAPP statute. *Id.* at 232. But the

court declined "to address the constitutionality of the anti-SLAPP statutes in light of

Article I, Section 4 of the Minnesota Constitution, and accordingly express[ed] no

opinion on the subject" because the appellants had not raised the issue below or in the

petition for review. *Id*. at 232. [1] Unlike the *Leiendecker* appellants, MDI squarely raised

---

[1] Following the supreme court's remand to the court of appeals, this court held that the
parties moving for anti-SLAPP immunity made a threshold showing that the claims

the issue of whether it has been deprived of its constitutional right to a jury trial both before the district court and in this appeal.

Even as *Leiendecker* abrogated *Nexus* as to the proper standard of review for an anti-SLAPP case, the supreme court commented, "Despite misinterpreting the anti-SLAPP statutes, *Nexus* identified a potential legal issue implicated by the unique procedural framework of the anti-SLAPP statutes" . . . whether "requiring the district court to make [pre-trial] findings . . . violated Article I, Section 4 of the Minnesota Constitution." *Leiendecker*, 848 N.W.2d at 231-32.

The Washington Supreme Court considered this issue in *Davis v. Cox*, 351 P.3d 862 (Wash. 2015). Washington's anti-SLAPP statute is nearly identical to Minnesota's statute, and requires a court to decide "whether the party bringing the claim can prove by clear and convincing evidence a probability of prevailing on the claim." *Id.* at 864 (quotation omitted). The Washington Supreme Court concluded that the statute established "a preliminary procedure for factual adjudication of claims without a trial, [without using] a summary judgment procedure." *Id.* at 867. The court contrasted

asserted against them related to acts involving public participation. *Leiendecker v. Asian Women United of Minnesota*, A12-1978, 2014 WL 7011061, at \*3 (Minn. App. Dec. 15, 2014), *review denied* (Minn. Feb. 25, 2015). This court remanded the matter to the district court to determine whether the moving parties met their burden of showing by clear and convincing evidence that the opposing parties were not entitled to immunity under the standard articulated by the supreme court. *Id.* at \*1. On remand, the district court held that Minn. Stat. § 554.02 (setting forth the anti-SLAPP procedure) is unconstitutional. *Leiendecker v. Asian Women United of Minnesota*, No. 27-CV-12-7021, 2015 WL 9704951 (Minn. Dist. Ct. Feb. 25, 2016). This decision is on appeal before the supreme court. *Leiendecker v. Asian Women United*, No. A16-0360 (Minn. May 31, 2016) (order granting accelerated review).

9

Washington's anti-SLAPP statute with that of California, and concluded that California law directed a court to consider the "probability that a plaintiff will prevail on a claim" rather than "requiring the plaintiff to establish by clear and convincing evidence a probability of prevailing on the claim." *Id.* at 869 (emphasis omitted). The court also considered similar statutes in Louisiana and Washington D.C., and concluded that those laws employed a summary-judgment standard. *Id.* at 870. But the Washington Supreme Court determined that Minnesota's statute, as interpreted by *Leiendecker*, most closely resembled Washington's law. *Id.* at 870-871. The Washington Supreme Court stated that because "[s]uch a procedure invades the jury's essential role of deciding debatable questions of fact," the Washington anti-SLAPP law violates the right of trial by jury and is unconstitutional. *Id.* at 874. The Washington Supreme Court followed this reasoning in *Akrie v. Grant*, 355 P.3d 1087, 1088 (Wash. 2015), reversing a lower court decision granting an anti-SLAPP motion.

Given the strict statutory interpretation in *Leiendecker*, 848 N.W.2d at 231-32, which this court is bound to follow, Minnesota's anti-SLAPP statute cannot be applied in a manner consistent with the constitutional right to a jury trial. Under the *Leiendecker* standard, a court is required to ignore genuine issues of material fact and to step into the jury's role of deciding disputed facts and weighing evidence. We therefore conclude that the statute is unconstitutional on its face. We reverse the district court's order insofar as it grants immunity based on the anti-SLAPP statute, and remand this matter to the district court. On remand, the district court is directed to consider the effect of the parties' stipulation of December 2, 2015, on further proceedings.

**II.**

MDI also challenges the district court's decision that Dahl is immune from liability under Minn. Stat. § 148.103, subd. 1, for submitting information to the chiropractic board and that Hooten is immune from liability for giving Dahl the information he used to file complaints with the board. Statutory construction is a question of law reviewed de novo by an appellate court. *Lee v. Lee*, 775 N.W.2d 631, 637 (Minn. 2009).

Minn. Stat. § 148.102, subd. 2, states that a licensed chiropractor "shall report to the board personal knowledge of any conduct" that he "reasonably believes constitutes grounds for disciplinary action under section 148.10." Minn. Stat. § 148.10, subd. 1(a) (2014), sets forth the grounds for revoking, suspending, limiting, restricting, qualifying, or refusing to grant a license to practice chiropractic, and applies to licensed chiropractors or persons seeking a license. *Id.* "Any person, health care facility, business, or organization is immune from civil liability or criminal prosecution for submitting a report to the board under section 148.102 or for otherwise reporting to the board violations or alleged violations of section 148.10." Minn. Stat. § 148.103, subd. 1 (2014). Reports made to the board are private. *Id.* The district court described this immunity as "broad" and "not limited."

Accordingly, under the statute, Dahl would be immune from liability for making a report to the board of conduct that he reasonably believed constitutes grounds for disciplinary action. Likewise, Hooten would have the same immunity by virtue of Minn.

Stat. § 148.103, subd. 1, for providing Dahl with the information he used in making a report to the board. The statute does not limit immunity to reports made in good faith.

"If the meaning of a statute is unambiguous, [an appellate court] interpret[s] the statute's text according to its plain language." *Brua v. Minn. Joint Underwriting Ass'n*, 778 N.W.2d 294, 300 (Minn. 2010). And, in general, we narrowly construe statutory grants of immunity "in derogation of a common law right." *See J.E.B. v. Danks*, 785 N.W.2d 741, 752 (Minn. 2010) (discussing immunity under Minn. Stat. § 626.556, subd. 4, for good faith reports of child abuse).

MDI alleged that the reports to the chiropractic board were made for anti-competitive purposes rather than for disciplinary action. The grant of immunity under section 148.103, subdivision 1, is not limited in any way: a person making a report to the board, even with an ulterior purpose or in bad faith, enjoys immunity from civil and criminal prosecution for the act of making the report.

The district court concluded that "[t]he taking of information unrelated to the documentation of the alleged unethical conduct and Board Reports and actions unrelated to the Board reports are not subject to the statutory immunity created by Minn. Stat. § 148.03." While we agree with the district court that the act of making a report to the board, regardless of purpose, is subject to immunity, we cannot agree that a person who then discloses the same reports to other persons or entities enjoys immunity for that conduct. Reports made to the board are private, a fact that confirms our conclusion that the act of reporting, even for an unworthy purpose, is immune from liability. But if a person compromises the private nature of the report by distributing it to others not

12

associated with the board, he or she does not enjoy immunity from liability for those actions.

We therefore affirm the district court's decision that a person is immune from civil liability or criminal prosecution for the act of making a report to the board regardless of the person's motivation, but reverse insofar as the district court determined that the immunity extends to subsequent disclosures of the same reports to others, such as to the insurance companies or their counsel.

**III.**

SUMA argues that the district court erred in dismissing its counterclaim under the Consumer Fraud Act, Minn. Stat. §§ 325F.69, subd. 1; 8.31, subd. 3a. The district court dismissed this claim under Minn. R. Civ. P. 12.02(e), for failure to state a claim upon which relief can be granted.

Minn. Stat. § 325F.69, subd. 1, states that "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided in section 325F.70." Generally, the attorney general or a county attorney enforces such claims by bringing a civil action. Minn. Stat. § 325F.70, subd. 1 (2014). But Minn. Stat. § 8.31, subds. 1, 3a (2014), permits "any person injured by a violation of [the consumer fraud act to] bring a civil action and recover damages, together with costs and disbursements." In order to use this "private attorney general" statute, however, a claimant must demonstrate that the cause of

action benefits the public. *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000). An action that is limited to harm caused to the person prosecuting the claim does not advance state interests and has no public benefit. *Id.*

Under Minn. R. Civ. P. 12.02(e), a court reviews a complaint de novo to determine whether the facts alleged in the complaint, or, in this case, the counterclaim, set forth a legally sufficient claim for relief. *Hebert v. City of Fifty Lakes*, 744 N.W.2d 226, 229 (Minn. 2008) The court must accept the facts alleged in the complaint as true and construe all reasonable inferences in favor of the nonmoving party. *Id.*

SUMA alleged in its consumer-fraud counterclaim that MDI's fraudulent practices induced chiropractors to select MDI, rather than SUMA, and that SUMA lost money because of it. But SUMA does not allege that consumers of MRI services would be harmed by MDI's actions.

Relying on *Kinetic Co. v. Medtronic, Inc.*, 672 F. Supp. 2d 933 (D. Minn. 2009), SUMA argues that pleading of a public benefit requirement is not "onerous," and that its reference to chiropractors receiving illegal kickback payments was sufficient to show a public benefit. *Kinetic* involved a claim by a self-insured employer who paid for the implantation of a Medtronic cardiac defibrillator in one of its employees. *Id.* at 939. The Medtronic device failed and a new device had to be implanted; although Medtronic did not charge for the new defibrillator, it did not cover the employee's surgical costs, which were paid by the employer. *Id.* at 938-39. Kinetic sued on its behalf and on behalf of others, alleging that Medtronic had continued to offer the defective defibrillators after learning of the defect, with 87,000 implants occurring after that time. *Id.* at 946. This

14

concealment imposed a burden on third-party payers like Kinetic, who attempt to predict their costs, but were unable to do so because of Medtronic's fraudulent concealment. *Id.* The court concluded that Kinetic's "effort to place this cost where . . . it ought to be borne may well provide a public benefit." *Id.*

SUMA argues that "numerous chiropractors were deceived into violating federal and state anti-kickback laws by virtue of [MDI's] wrongful conduct." But this is not analogous to *Kinetic*; other chiropractors, like Dahl, should be able to recognize an illegal offer. Nor does SUMA allege that the ultimate consumer, the patients who had MRIs at MDI, suffered harm because of the scheme. The sole damage alleged is that SUMA lost business to a competitor. This is not a public benefit and is not sufficient to state a claim upon which relief can be granted under the consumer fraud statute.

SUMA argues that the district court erred by determining that it was not a consumer under the consumer-fraud statute because it was a sophisticated competitor to MDI. Citing *Group Health Plan, Inc. v. Philip Morris, Inc.*, 621 N.W.2d 2 (Minn. 2001), SUMA asserts that other decisions of the Minnesota Supreme Court make clear that standing under the act is not limited to purchasers or consumers. But the district court "decline[d] to read a standing requirement precluding claims by competitive businesses, where no limitation is imposed by statute." Instead, the district court stated that it "will look to SUMA's claims and the relief sought to determine whether it has properly asserted a public interest to pursue the MCFA claims under the private AG statute." The district court concluded that SUMA is a "sophisticated competitor," but the consumer of MDI's services were patients and that SUMA's counterclaim failed to provide a public

15

benefit to those consumers.  The district court did not err by dismissing SUMA's counterclaim.

## D E C I S I O N

The procedural provisions of Minn. Stat. § 554.02 deprive the non-moving party of the right to a jury trial by requiring a court to make pretrial factual findings to determine whether the moving party is immune from liability.  The statute, therefore, is unconstitutional.  Minn. Stat. §§ 148.102, subd. 2, .103, subd. 1, extends immunity to a person reporting misconduct of licensed chiropractors or those seeking a license to the board of chiropractic, but a person is not immune from civil or criminal liability for disclosing the same information to others.  Finally, a party making a private attorney-general claim under Minn. Stat. §§ 325F.69; 8.31, subds. 1, 3a, must demonstrate a public benefit in order to sustain a cause of action.

**Affirmed in part, reversed in part, and remanded.**